## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Lois Ann Gibson, et al and Maryland 20-20 Watch, ) | |
| Frederick, Maryland, et al; ) | |
| C/O Counsel, and Amicus, P.O Box 370 ) | |
| Woodsboro, Maryland, 21798; ) | |
|      And ) | Case No. GLR-22-1642 |
| Class Representatives Pursuant to Federal Rule of ) | |
| Civil Procedure 23, and/or Putative Classes of ) | |
| similarly situated Voters of Maryland and/or )_ | |
| Elsewhere In the United States of America: ) | |
|      And ) | |
| All others similarly situated injured persons, in ) | |
| whatever State or County they reside, deprived of ) | |
| their Constitutionally Guaranteed, Freedom, Liberty, ) | |
| Expression  and Right to an Effective Vote by the acts ) | |
| or Actions of the Defendants herein; ) | |
| ) | |
| **PLAINTIFFS** ) | |
| ) | |
| **V.** ) | |
| ) | |
| The State of Maryland and Several Agencies of the ) | |
| State, Including at least the State and County Boards ) | |
| of Elections in the Specific Counties Listed herein ) | |
|      And ) | |
| A State and National  Rico Enterprise, in Part Located ) | |
| in Maryland, and/or doing Business as Part of the ) | |
| Commerce in Maryland with Counties, i.e., ) | |
| Frederick,  Howard County, Carroll Counties, ) | |
| Maryland and 18 additional Counties or Voting ) | |
| Jurisdictions: ) | |
|      And ) | |
| Center for Tech and Civic Life (CTCL) ) | |
| A Chicago IRS Code §501 (c)(3) Corporation ) | |
| 233 N Michigan Ave., Suite 1800 ) | |
| Chicago, Il. 60601; ) | |
|      And; ) | |
| Presently Unknown Defendants, ) | |

And;                                                    )
The State of Maryland Office of the State Prosecutor,  )
          **DEFENDANTS**                              )
                                                           )

**Notes to the Clerk of this Court, Regarding the Emergency Nature of this Amended Complaint; the Necessity for forthwith Injunctive and Investigative Relief:**

(1) Service of Process for the Multiple Defendants is Proceeding  Pursuant to Applicable State and Federal Rules;

(2) This First Amended Complaint is filed pursuant to Federal Rule of Civil Procedure 15 (a)(1)(A) in that; on information and belief, no party has been formally served or filed a responsive pleading to the Complaint, as of the date this First Amended Complaint is Filed in this Court;

(3) Or Alternatively any such response is within 21 days of such response that has been filed which is presently unknown to these plaintiffs and their counsel.  Accordingly, this Amendment, relies upon material evidence of the specificity of the Frauds and RICO conspiracies alleged both foreign and domestic, and may include participants in acts of war, in attempting to overthrow by fraudulent means the Government(s) of Individual States and the Government of the United States itself.

(4) Under the RICO statute, with its inherent 10 year statute of limitations on unlawful acts alleged, the specificity of the frauds is indeed Legion.  Therefore all of these allegations and parties place these plaintiffs squarely before this Court.  Each and every allegation herein, when tried or otherwise proven shall demonstrate the existence of a Conspiracy to overthrow the lawful government of this Nation, by force, violence, trickery and corruption of its most basic systems.

(5) All of these matters reek of immediate and irreparable harm, the most urgent of which is the failure of some of the conspirators to abide by the Federal protective statute expiring within about two weeks, September 3rd, 2022.  This Note to the Court and the allegations contained in the Heading for this Case, and in the Body of the First Amended Complaint, are therefore, respectfully requested to be construed as a request for a Hearing on a Preliminary Injunction to be convened at the earliest opportunity.

(6) Plaintiffs respectfully request that this case should be on a fast track to a Hearing on a Preliminary Injunction once notification has occurred, including attempted service of process.  Steps are being taken forthwith by Counsel to serve all necessary parties within the State of Maryland, and the Chicago corporate defendant.

# FIRST AMENDED COMPLAINT
## -------------------
## I. NATURE OF THIS CASE--A SUMMARY:

**A.** The background of this case began shortly before the presidential election of 2016 when a group of concerned citizens formed an informal organization entitled Maryland 20-20 Watch.  Investigations were undertaken, a series of anomalies and voting practices were noted and reports furnished to Maryland's governmental officials and the groups investigated with no observable results.

Shortly before the presidential election of November 2020 plaintiff Mrs. Lois Ann Gibson volunteered to be an election judge.  She received the training and was prepared to serve during the election of November 2020. However, on election day she became ill and unable to serve.  She testified via a declaration:

> "on or around November 2, 2020, I Lois Ann Gibson, at approximately 9am, went to the Frederick Board of Elections Office at 340A Montevue Lane, Frederick, Maryland to return the training manuals.  This location had a Ballot drop Box out front at the end of the building.  I witnessed a man hurriedly stuffing what appeared to be a large number of ballots at least several dozen from a canvas bag he was carrying to the ballot box.
>
> I asked this person who he was and seemed startled but said he was from the Post Office and he quickly went back to the vehicle and left. I was concerned because he did not have any official uniform, badge, or vehicle and was very anxious.  This incident occurred at or before 9am. " [s].

Later, at a public meeting, with an employee of the Board of Elections attending, when pointed questions were raised about surveillance cameras for drop-boxes in Frederic County, an employee of the Board of Elections

(Anthony) admitted that none of the eight locations for Frederic County Drop-Boxes had functional surveillance cameras during the 2020 election cycle.

These and many other corroborating and supplementing anomalies of malfunctions, along with accumulating similar information across the country cause a surge of investigations some of which were reported in the complaint filed on July 4, 2022. That investigative effort as reported in the complaint also included financial documents obtained from three counties Frederick, Carol and Howard.

The results of that analysis strongly indicated that the monies obtained as grants from CTCL were used to influence the elections and likely included payments to couriers and for the harvesting of ballots unlawfully delivered into drop boxes.

In the meantime similar investigations were occurring all over the country and the various voter organizations and Maryland counties continued the investigation process.

On or about July 21, 2022 a game changing revelation occurred in a meeting of the Baltimore County Republican women's club. At that meeting a renown physicist and expert witness, Dr. Douglas G. Frank, Exhibit # 10, made a presentation at a regular club meeting.  Dr. Frank presented evidence of voter rolls and voting that demonstrates the existence of the system by which, nation-wide voters rolls are fraudulently manipulated.  Analysis of 43 states where this appeared to be true was presented, and one of the most clearly manipulated election states was Maryland.

-2-

That presentation resulted in Dr. Frank agreeing to become an expert witness in this case and thereby to make available as evidence his evidence and investigation results.  That evidentiary material, up to that point in time, regarding a total of 43 different states was striking.  Systemic intentional voter fraud was demonstrated as starkly apparent evidence in all of the 43 states examined, including Maryland.

Dr. Frank's mathematical and statistical analysis is to the effect that since the turn of the century public, data records regarding population and voter information, using as a baseline, the United States Census, demonstrates what appears to be, with no other credible explanation, material manipulation of voting results in all 43 states examined.  Further, the control methodology for achieving the results observed appear from the data to be virtually the same.  The inescapable conclusion is that a massive vote fraud not only has occurred, but that fact is provable in Court with probative evidence.

His opinion, again based upon essentially incontrovertible data supports the conclusion that Maryland leads the pack in terms of its success in manipulating vote data regularly as a systemic fraud.  But the most striking evidence of all is the conclusion that the only practical way to accomplish this result is a database management system, on-line, in each state being manipulated.  If this is true, and it appears to be so, then exposure of this fact amounts to a disclosure of a massive insurrection against our entire constitutional framework, and this Country itself.

This case's anecdotal evidence was then compared to this new evidence.

Both sets of information corroborate each other set.  Therefore, plaintiffs amend their allegations to include this specific allegation of vote fraud by systemic controls over the election process, both voting and counting, based upon this new evidence.  It is now alleged that this fraud has occurred in all counties and overall in the 2020 election.

Plaintiffs propose to prove that result by probative evidence presentation to this Court, and/or at the accelerated hearing on a Preliminary Injunction.  But, the defendants must not be allowed to destroy the evidence contained in paper, electronic and data base systems, the data itself, with four elements preserved, reports and displays, controls, storage and retrieval elements.  Also, with on-line data control systems, system and data definitions, and programs preserved.

These materials are in addition to paper ballots and electronic images of the results of voting and vote counts.  From all of these materials a 30(b)(6) deposition or three, will, plaintiffs allege expose the entire fraudulent scheme.   If preservation does not occur, such exposure of the truth shall not be possible. (Or as a practical Matter very much more difficult).

This conclusion is further corroborated by the experiences of undersigned counsel with on-line digital financial and personnel database management systems, and supports the conclusion that a highly effective database control system allowing the manipulation of vote counts does in fact exist in the state of Maryland. The effectiveness of the application of available statistics and the weaknesses, or more correctly the total

lack of any chain of custody control over ballots or voter identification measures has allowed and continues to allow a total breakdown in the credibility of Maryland system. This breakdown in all 43 examined states, including the six swing states examined by Dr. Frank's methodology supports this conclusion to a high degree of certainty.

Further, this conclusion by Dr. Frank is corroborated by all of the anomalies known to exist beginning about the turn of the century by Maryland 20-20 Watch and all of the exhibits one through 11 attached to this first amended complaint.

To further corroborate this opinion and the existing set of evidence to the point of trial evidence to a certainty of nearly 100% certain all that is necessary, in the opinion of plaintiff's here in and their counsel is to conduct a short series of 30 B6 depositions with associated subpoenas for documents in the form of the database files which are known and admitted to exist in the offices of the Maryland State Board of elections. Also necessary would be depositions of control persons who do the actual manipulating of the database systems to commit the fraud and the vote counts in Maryland.

Respectfully, it is imperative to the interests of justice that this Honorable Court allow the presentation of the above evidence and has coordinated there with issue a fourth with stay on the destruction of any election materials electronic or otherwise by the persons who are now known to have committed these horrific breaches of duty and trust of this state and their country.

### B.  CONCLUSION REGARDING INJUNCTIVE RELIEF:

Accordingly, the court should issue the necessary orders setting the date of the hearing for a preliminary into injunction at the earliest possible moment. In addition the court should approve at least a truncated discovery scheduling order to include the issuance of subpoenas duces as needed and preservation of all election records and materials from November 2020 elections and later until removed by further court order.

### II.  JURISDICTION:

Plaintiffs in this case filed this action on July 4th 2022 as a Federal Cause of action in the District of Maryland.  They allege Federal Question jurisdiction regarding wide spread intentional vote fraud in Maryland and elsewhere in the United States of America.  They allege  amounting to systemic fraud, in highly similar actions in virtually every state, and essentially all Counties and Voting Jurisdictions in Maryland.  Recent developments, some of which were unknown at the time of the filing have allegedly uncovered the virtually identical pattern of data-based computer fraud in each state.

A conspiracy under the RICO statute and other constitutional violations, including the equal protection of the laws, falsification of State and Federal Voting records and the magnitude of the claims  and due process violations patent in the facts firmly establish Federal Jurisdiction.  The temporal scope of the claims is beginning in about the year 2000, proceeding through the 2016, and 2020 presidential elections, and ongoing at the present time.

The patten of alleged fraud, as demonstrated by both statistics and sworn anecdotal evidence, is virtually identical in all states.  The frauds consist of at least 7 different methods of false voting and manipulation of voting results.  A centralized on-line database management system, and a stash of available false but credible on their face votes is the heart of the fraudulent state-wide system.

The recently discovered central control mechanism, on-line data-base manipulation and control of  utilizing a repository of pre-selected vulnerable voter registration "available fake votes". "Inflating our registration rolls, stuffing phantom ballots, and then cleaning it up afterwards, its that simple" (Ref. Frank Comment regarding Idaho voter fraud).  Therefore these fake votes, phantom voters, accounts available for minipulation, is central to the claim of Multi-District fraud upon honest citizens.  Examination of public data in (as of now) 43 states discloses the fraudulent manipulations.

The pattern is inescapable, amazing, and clear.  That central claim, and the mechanism of the fraudulent actions also provides the key to the methodology as well as the proof of its existence.  The fact of a central control system also, if preservation of the evidence is required, and a short but targeted discovery is allowed, with subpoenas, shall provide, by the time set for a preliminary injunction hearing incontrovertible proof of the truth of the allegations herein.

### III.  NECESSITY FOR A PROTECTIVE ORDER

To provide this solution, the Court is requested to reconsider, and hold an adversary hearing regarding such an emergency Injunctive Order, i.e, that all such election evidence must be preserved beyond the cut-off date of September 3, 2022.  Such Order is requested for Maryland, and for all other Federal Districts.  Otherwise, the Court can expect the perpetrators of these voluminous frauds will destroy the evidence of their guilt.

For this reason, a protective order extending the existing deadline during this pendency of this case is vital, not just for proof of the allegations herein, but for elimination of the fraud in all future elections.  Thereby, elimination of the fraud(s) in this case provides a just avenue for all-time elimination of such events in our voting history. by injunctive corrections by this Court.  Upon the conclusion of this case, with proper implementation, the history of such outrageous abuses as outlined herein should be expected to cease.

### IV. DETAILED STATEMENT OF FACTS

1.  This filing is believed to be an unprecedented, unique, but likely determinative of the future of election fairness in for this State.

2.  The designation and classification of this case as a potentially multi-district Federal and Maryland class action appears to be warranted based upon similarity of claims, and information now available on similarity of methodology of election fraud now

known to exist in multiple, but likely not in all jurisdictions, in the United States.

3.  Accordingly, this case is filed on behalf of all honest American citizens who have been deprived of their Constitutional freedom and right to a fair election in Maryland, and elsewhere across America, for now and forever with a hope and trust in God, that this Country as we know and love it survives.

4.  Nation-Wide fraud and money laundering, has undoubtedly occurred and shall, unless stopped in its tracks, occur again.  In the 2020 election, in Maryland, in a series of Twenty-One fraudulent payments to County Government, through apparently normal official budgeting receipt channels, payments, disguised as "grants" totaling for the 21 counties, $ 6, 245,797 (million) dollars, monies were "Granted" to 21 Jurisdictions in Maryland.

5.  Apparently through a uniform process by a carefully controlled, "conditional agreement", from two documents furnished, the same "Grantor" (CTCL or Grantor) in a separate "Boiler-Plate" type document for each county of the 21 Counties in Maryland, through their party controlled leaders, donated a substantial sum of money designated for particularly defined uses related to the Presidential Election of 2020.

6. Those funds were carefully proscribed to be spent, by the Grantor, and agreed in writing as a signatory to the Grant Document by the County Management, for a particular (purportedly) innocuous and perfectly lawful, usage.

7.  But, disclosure of the money spent does not conform with the stated purposes.

The funds were just not spent that way, in fact a large proportion of the funding are alleged to be for unlawful purposes designed to aid one party, the one party favored by the Grantor.

8.  This allegation, if proven to be true, as it appears from the three County sample of financial records examined would be a massive violation of election law as well as tax law, filtering down to every individual who performed any unlawful service.

9.  Such violations, by individuals and supervisors would necessarily be in violation of any of the applicable laws.  In addition, all financial officials would be misreporting budget funds to the extent any misspending or misreporting occurred.

10. The purported purposes, clearly were disguised, designed and incorporated into the "Grant Agreement Document" strictures to fraudulently protect the tax exempt status of the Grantor, but ONLY IF, the Grantor's Agents, or Principal Donors, knew or should have known that BOTH the Grants and the Facilitators, the Harvesters paid the big money listed on the disbursement sheets.

11. It appears, and Plaintiffs allege, that these money launders were, either the couriers who delivered the harvested and created unlawful votes, or they conspired with the persons who got paid for delivering them to the drop boxes.  In either event, these persons who received the money, and those that handed it out, were in fact unlawfully biased.

12.  Similarly, so were the very agents doing the negotiation, for the Grantors,

CTCL, and for each receiving County.  Implicitly, its management as well as the Grantee participated in the Tax fraud which are imbedded into this RICO fraud conspiracy process.

13.  In this regard, Plaintiffs seek the immediate permission to conduct at least one Rule 30(b)(6) deposition from each of the four counties, Frederick, Carroll, Harford and Howard, on a forthwith basis.

14.  Permission is requested to require, immediately upon service, that each County to furnish the person or persons who negotiated with the Grantor, and those who assigned personnel and equipment and expended the funds donated including record-keeping on those expenditures, including personnel for a Rule 30(b)(6) deposition, after responding to subpoenas for the relevant documents for each county where material deviation from normal is indicated.

15.  It is expected that testimony will be elicited to the effect that the requirements expected by the Grantor (CTCL) included prohibited practices, and the Grantor's funding persons were well aware of the unlawful nature of the actual requirements as distinguished from the purported fraudulent requirements of the written Grants. This was because neither the Grantor, nor the Grantee ever expected those "paper" requirements to be followed.

16.  If those requirements were serious, and other than a fraud which they were, there would have been some follow-up, corrections and corrected reporting on the actual

incorrect, i.e. overpayments, underpayments or simple reporting errors, or missing a required limit.  It is telling that not only were there none, there were not even any semblance of any such bookkeeping adjustments.

17.   However, after three counties of comparisons, there were no such corrective actions, not a hint of a single one.  This apparent fact demonstrates forcefully the fact of the subterfuge.

18.   In this regard, Plaintiffs request permission to advance and notice several 30(b)(6) depositions, along with necessary subpoenas, forthwith, before the hearing on the Preliminary Injunction to clarify facts necessary to aid the Court at the time of the Preliminary Injunction hearing.

19.   This information, easily obtained, will demonstrate this key element of the financial manipulations of each counties record. This is evidence demonstrating the financing element of the actual vote counting fraud throughout the State of Maryland.

20.   As a related but different aspect of the presence of fraud in this entire situation, those same manipulations were in fact an enabling fraud which  violated Federal Tax law, both individual (as to the contributors and managers of the "purported charity", and lack of enforcement by IRS as a federal agency.  The truth is, that the purported tax constraints were nothing but sham requirements designed to facilitate and hide the real purpose of the alleged charity, vote fraud, paid for by our own Federal Government via loss of tax revenue by extremely wealthy contributors.  The requirements

were merely a fraud for subverting the legal requirements with camouflage, and the fraud worked, beautifully.

21.  It has been admitted by the Elections Board of Frederick County, by its chairman, a county employee, that for the past presidential election, there were 8 drop boxes in Frederick, County and Eight cameras for surveillance.

22. And none were ever monitored (Admission of party opponents in open meetings).

23.  The lead Plaintiff, Ms Gibson, was on election day, a trained Judge of elections, however, she was ill and therefore could not serve as a judge.  She, while attempting to return election materials to the office before hours, observed and interacted with a person depositing "dozens of ballots into the drop-box and inquired, "what are you doing".  The person responded, "I am from the Post Office", then quickly got in his vehicle.  (Declaration, Lois Ann Gibson) (Exhibit # 2-1).  The post office deliveries are not made into drop boxes, and there is no working surveillance camera at that location, or any other in Frederick County (Admission of "Anthony" a Election Board employee of Frederick County in an open public meeting).

24. When later, at a Board meeting, further questioning elicited the responses to the effect that the video tape cameras were never monitored, so all such events have for the entire period of drop-box use, apparently been without any intervention, control or monitoring whatsoever.  All of this failure is contrary to the requirements, of the

Maryland constitution for which the State of Maryland, and the Maryland State

Prosecutor have the duty to monitor fraud and abuse.  They failed.

25.  An oral admission from the Board of Elections of Frederick County is
believed to report that the surveillance cameras for the eight drop-box locations were
privately owned, privately controlled, and no examination at all has ever been made of the
tapes which would indicate with specificity the identity of the couriers acting as mules for
the fake overrun ballots.

26.  This entire subject shall be explored for available probative evidence utilizing
30(b)(6) depositions and subpoenas just as soon as the Court authorizes such usage.  The
suggested plan (at this time, subject to change)  is to start small to obtain details on the
methodology of the fraud, present the facts at the hearing for a preliminary injunction,
and plan the trial evidence gathering soon thereafter.

27.  All of the 21 Counties would be expected to be analyzed for fraudulent drop
boxes and addresses,  in detail, with the burden placed upon the County, in each instance
to show a reasonable methodology preventing fraudulent count results.  All of this would
be prospectively applied and controlled, with the consequences of the past election to
follow as dictated by the Court to follow in due course thereafter.

28.  The accounting records for the three counties examined indicate manipulation
of the county disbursement records to conform to the penny to the grant amounts.  As an
accounting matter this item alone renders these figures suspect.  These indicators

cumulatively demonstrate that it is extremely likely that the identity of the recipients of

the funds, which does appear to be recoverable via subpoenas, coupled with a deposition

would indicate with specificity that these particular persons performed at least some of

the fraudulent acts.  Those resulting, in counting of inactive voters and deceased voters,

for example, and the electronic manipulation of ballot results.

29.  This conclusion conforms to the results observed across the country and the strikingly

similar pattern of the unlawful *Corporate* Financing of the voter fraud.  See below for

confirmation of this actions of the part time workers, paid with the unlawful corporate

money.  These actual tasks, as compared to the non-partisan tasks for which they were

purportedly hired shall be gleaned, for those part time workers specifically, one way or

another, by the planned subpoenas and depositions, hopefully as approved by the Court

on an emergency basis prior to the hearing on the Preliminary Injunction.

30.  On information and belief, all of the voting machines in Maryland are all under the

control of the Dominion/ES&S Rico Enterprise, rented or owned or otherwise a

controlled system.  This system, and management controls are well established to have

online capabilities and manipulation capabilities actually observed as such on multiple

occasions.

31.  Repeated inquiries for a description of the chain of custody of ballots removed from

drop boxes (if any exist and subsequent handling) i.e. , placing of ballots into the boxes,

removal from the boxes and forwarded ballots to machine counting or other accumulation

stations.  Control counts apparently for the three counties apparently do not exist.

32.  Certainly, no such detailed descriptions of control methodologies have ever been received in response to inquiries.  No response at all has ever been received from the three counties examined.  And again, no surveillance tapes or results have also ever been described in materials received, and apparently, on information and belief, do not exist.

33.  This aspect of the analysis for the three counties is presently being re-verified, and shall be subject to the subpoena process in the interim between the filing of this complaint and the requested hearing on the Preliminary Injunction.

34. On information and belief a substantial number of persons received funding from participation in the collection of ballots from voters, and distribution to drop-boxes.  See testimony of plaintiff Gibson (Exhibit # 2-1) and adjoining County detailed payments, (Exhibit # 5) , and the newly discovered scheme (Harvesting unused ballots from voters who have left the state, via the ERIC system, Exhibit # 3).

35.  Disbursement records disclose that some individuals received multiple checks or money orders for paid activities that remain undisclosed in the disbursements record, despite repeated inquiries.  Relatively large sums of money for specific persons who received more than one check have been observed, without the explanation of duties required by the Grant Contract.  As mentioned earlier, three persons from Howard County received identical sums of over $ 11,000 each, out of a total of over 800 individual money distributions to about 730 different persons.  Strangely, the great majority of the

distributions were in round dollar (that is .00) amounts, an indication of piece work

payment, as for example, for a per ballot delivered pay rate (as rumored).  This matter

will be verified by a subpoena or deposition in due course.

36.   A Federal Rule of Civil Procedure Rule 30 (b)(6) deposition coupled with a

subpoena for disbursement documents is presently being requested to be permitted, one

such subpoena and deposition, for each of the three counties for which the initial

investigation leading to injunctive relief is requested.

37.  Similar inquiries are expected based upon the successes to be achieved by this

investigative result during the immediate interim week following filing of this complaint,

as applicable to the remaining 18 Counties receiving Grant funds (Exhibit #1).

38.  A substantial equipment expenditure appears in disbursement records for the four

Counties for which expenditure data was only partially acquired.  The request for several

subpoenas pursuant to a Rule 30(b)(6) deposition, and equipment disclosures shall

include a production and/or inspection of all such equipment, and also ballots, with

envelopes made available for inspection and copying for test purposes.

39.  It is expected that a subpoena for production of all electronic images of voting and

actual paper ballots and envelopes will require a subpoena for leave to examine all ballots

by electronic equipment, likely for all three sample counties.

40.  To date requests for such complete production have been resisted, (in two of the three

examined counties) accompanied by a demand for payment for purported retrieval

expenses.

41.  At the hearing for a Preliminary Injunction, a request shall be made for a protective order requiring production of each and every ballot and envelope as well as electronic images, to the extent such exist.  It is not expected that such production will be on an emergency basis, but a substantial testing is necessary for a complete analysis of the allegation that false or duplicate copies of ballots were manufactured as a part of the alleged fraud.  Such forensic testing is now well known to be within the state of the balloting art and science (Ref. Jovan Hutton Pulitzer, et al).

### Three Kinds of Fraud in the Grants

42.  The specificity in the three kinds of fraud in the Grants are: (1) To hand out money, purportedly for a lawful purpose, but as a hidden yet operative part, the real agenda, is to never countermand, or challenge the misuse and misreporting by the governmental agency of the actual unlawful use of the funds, and the cover-up of the misuse by misreporting.  The actual use of the funds, that is the actual monies spent from the disbursement records have been furnished.

Those expenditures do not comport with the purported uses required by the Contracts.  Again, the use of at least one Rule 30(b)(6) deposition as to what was done, and the associated equipment expenses is expected to elicit details of specific matters directly related to election ballot and counting fraud.  This fact has implications wherever it has occurred.

And alleged fraud appears to be identical for all Counties, from the consistency of the contracts required for rewarding of the Grant(s) across Maryland (See Exhibit # 1, - grants from same grantor, $ 6. 2 Million). (2) disclosure of tax fraud by those large - money contributors.  (3) the Grantor fund would itself be participating in a tax-fraud and would lose its exemption from tax laws retroactively, with parallel effects upon its donor contributors.

43.  The purportedly innocuous classification of Grant Use matters are by no means routine violations or mere error.  Such manipulation of decades-old IRS Section 501(c)(3) principles are: (when demonstrated to have occurred with knowledge or intent as appears herein) would be in reality intentional violations of Tax law, by both the Grantor and the Grantor's principals, those with knowledge, who participated in the tax evasion as well as the misreporting of fraudulent received funds, with intent to subvert the election laws of the State of Maryland as well as the Tax Laws applicable to non-profit 501 (c)(3) organizations (For Example, Defendant CTCL) .

44.  The existence of these malfunctions have been disclosed and are alleged in this filing. Given the apparently reoccurring and casual nature of the misreporting discovered as to the three Counties investigated, to date but only considered as a voting integrity matter, the evidence is nevertheless clear.

45.   For this reason, all records of all related financial transactions, Grants, reports of expenditures, 1099 forms for all employees, whether regular or temporary, to deliver and

-19-

pick-up ballots, or otherwise are hard documentary evidence of the intent to use

misstatements of or mislabeling of entries into financial records to cover-up the fraud in

the ballot fabrication and false delivery process.

46.  And this process will undoubtedly be repeated in future elections unless it is

corrected forthwith, with this lawsuit.

47.  Second, the Grantor, the non-profit organization, would upon demonstration of a

biased, non-qualified for charitable taxable use of Grants, be expected to lose its tax

exempt status under IRS Code Section, 501(c)(3).  In this event, where the contributors

conspired with the Grantor, and took tax deductions, they would be expected to be

participating in a tax fraud.

48.  If, as reputed, large contributors were involved with knowledge of these improper tax

deductions, those Contributors could be liable for recovery for Tax Fraud, and possible

false claims act liability.

49.  This disclosure would be expected to have severe consequences to each of the large

contributors who it appears have funded the unlawful nation-wide constitutional

violations, while being rewarded for their unlawful efforts with large tax deductions, to

which they were not in fact eligible.  Such considerations would be a related matter to the

main thrust of these claims of voter fraud.

50.  Cleverly, and apparently incorrectly, as if with knowledge of the falsities, the

agreement with each conspiring donee voting jurisdiction (a County, like here Frederick,

Howard, and Carroll, and presumably 18 others) would have to agree to spend the money for the legitimate purposes as agreed.

51.  If the constraints were not met, as they apparently were not, at least in some instances, each such failing jurisdiction would purportedly (under the terms of the contract) have to refund the Grant.  Apparently none have done so.  Each such instance would be both a voting law violation, and a tax law violation, and each such fabricated vote would be a constitutional violation if each plaintiff voter whose vote is negated by the false uttering procedures.

52.  New technology now aids in identifying and proof of the various methodologies to catalog and prove each type of fraud.  This has now become practical, given the disclosure of the Ballots and Envelopes, to an amazing extent.

53.  To the extent each official who disbursed the money and covered up the failure to spend it as agreed, that person would also be committing, or at least aiding and abetting the overall tax evasion scheme, for every 1099 error and each tax deduction as well.  If any part of the funds were used for an unauthorized, or unlawful purpose, that County would be in violation of the Maryland Election law.

54.  To the extent this evidence, when placed in good form via, subpoenas and depositions an election law violation has occurred, and will thus occur again unless this system is disassembled by legal edict, of one kind or another.  This malfunction of the working persons level within each county government accepting such funds now has

become clear.

55.  To this end, once the equitable relief necessary for corrective action become effective

by Order of the Honorable Court, it appears that corrective action in the form of

legislative actions, or even jury decisions may become necessary as determined according

to Constitutional constrains under the existing Twombly/Iqbal procedural standard,

56.  Nevertheless, as to Grant funds received and expended, the evidence clearly shows,

when finally produced, after years of attempting to obtain it, the purposes for which the

money was spent do not conform to the agreed in writing, election neutral purposes.

Testing of actual uses of the funds as comparted to the required partizan neutral

requirement is expected to demonstrate unlawful bias pervading the Grant distribution

process along prohibited partizan lines.  And also cover-up of the violations by knowingly

false financial reporting.

57. Thereby, the honest functioning of Maryland's entire constitutional process is not only

threatened, but virtually guaranteed to fail in the upcoming election as well.   All that

must occur to assure this result and to assure the replication from now on, is a simple

expansion and repeat performance of the "Gibson drop-box trick" which is, by all of the

available evidence, now alive and well in Maryland.  (See, Exhibit # 2.1.   Declaration of

Witness, Lois Ann Gibson).

58.  To demonstrate the magnitude and the prevalence of the unlawful practices in

Maryland these Plaintiffs submit herewith both anecdotal and sampling evidence

demonstrating the existence of election fraud.  The frauds have occurred, both in the

biased financing of the election operations, in hiring of personnel and the false and/or inaccurate reporting of funds spent as received from Grants, and in the misdirection or obstruction of inquiries regarding expenditures of "Grants".

59.  All but three Counties in Maryland have partaken of the funding by outside influences, subject to control over the spending.  That control, apparently is uniform in abuse of not conforming to Federal Guidelines, this also being apparently a tongue- in-cheek, disguise according to the sampling completed as of the date of this filing.  The first three counties for which data has been retrieved and examined.  18 more counties have received the suspect funds, but expenditures have yet to be analyzed by plaintiffs herein.  See Exhibit # 1 for Total Funding Reported for Maryland, subject to analysis.  $ 6,245,797.

60.  The events described in this lawsuit, unless placed under judicial control, immediately, threaten the stability of the Republic, threaten to destroy all hope of any fair election process for all time.

61.  This filing is also pursuant to the Constitution of the United States of America and the Constitution of the State of Maryland's believed to be unique Amendment.  That amendment, established the Maryland Office of the State Prosecutor [1]with the jurisdiction and specific power to investigate election fraud.

        That agency has not yet responded to our requests for an investigation and/or aid in the investigation of the factual underpinnings of these Class Actions.

62.  This filing is also, pursuant to federal rule of civil procedure 23, alleging, among

---

[1]Maryland State Prosecutor - Origin & Functions, https://msa.maryland.gov › msa › mdmanual › html.  The office of State Prosecutor was established by Constitutional Amendment in 1976 (Chapter 612, Acts of 1976, ratified Nov. 2, 1976).  Part of the Constitutional duties of that Office is to maintain election integrity, free from fraud or political abuse.

other violations, a RICO conspiracy by multiple parties, alleging fraud, money laundering

and bribery; a conspiracy to violate federal constitutional liberty, due process of law, and

federal and state civil rights (abrogation of voting privileges by fraudulent dilution of

valid votes).

63.  This filing is also against the State of Maryland in that the Constitution of the State of

Maryland, in an Amendment thereto established the Office of the Maryland State

Prosecutor, with the specific jurisdiction and authority to investigate Election related

violations of law and fraud.  This State failed to carry-out its duty to insure that the voters

systems and function were free from fraud, manipulation and malfunction.

64.  Accordingly, the State of Maryland should be held accountable for all expenses of

remedial action with regard to all of the matters herein, and funding of corrective

measures including the attorney's fees and costs of this litigation and all cures required to

create a workable fraud free system beginning immediately.

65.  This prospective loss of the right to vote, is material, genuine, and

undeniable, both as to what has previously occurred, and prospective continuing

irreparable harm absence of the required extraordinary corrective action.

### **Immediate and Irreparable Harm Has Occurred and is Continuing:**

66.  Immediate and irreparable harm has already occurred, is continuing, and is, on

information and belief is now being planned by the wrongdoers to be repeated.  Thereby

absent extraordinary emergency action by this Court shall not just continue, but to be

exacerbated, and will occur again into the foreseeable future.  There is no reason why any

doubt whatever exists as to the likelihood of these fraudulent actions to continue.

67.    Need for Injunctive Relief with evidence Protective Orders, Witness Protection

and mandatory financial and date protection Orders are required to extend the preservation of evidence to Conform to   52 U.S.C. § 20701 until full knowledge of these complex facts can be disclosed, corrected and expunged for all time from our governmental acceptable function.

68.  These acts shall continue, as in the normal course, with continuing immediate irreparable and unconscionable damages, so long as the denials of rights extant in the occurrences of the past and foreseeable future are not corrected.  All of this is contrary to the contract contained in both the Maryland Constitution, and the Constitution of the United States of America. The Property, Liberty, and Voting Rights, of each State of their residency's guarantees, (for example here) these Plaintiffs, the State of Maryland, and/or in their respective State (Again Here the State of Maryland) by the events described in this Complaint for Relief and/or as attached.

## NEWLY DISCOVERED EVIDENCE
## ADDED IN 1ST AMENDED COMPLAINT

69..    Exhibit # 6 (Attached to the First Amended Complaint).

70.  Newly Discovered Evidence, Alleged to be Business Records and An Admissions of a Party Opponent.

The Maryland Board of Elections, by the release of its records to an apparent Baltimore Sun reporter, and her reporting on the internet on or about July 11, 2022, disclosed that it had sent, so far, about a half-million ballots to persons who requested ballots, issued in the names of purported genuine voters, with the names printed on the

Ballots, for use in the Maryland State Primaries, which occurred, July 19, 2022.

71..  It is alleged, that it is self-evident that no proper vetting, identification of the person making the requests, of security, AT ALL could have existed on such a high volume of requests.  Further, as labeled in Exhibit 6, labeled by the defendant Election Board, About 55,000 of the requests were by July 17, 2022, internet email.

72..  Exhibit #7, Mail In Ballot Requests by County, November 3, 2020. Exhibits 6 and 7, standing alone, demonstrate that there is no chain of custody over election Ballots, sufficient to guarantee that Maryland Voters will get a secure and non-corrupted election result without great change.

73.  Exhibit # 8 is the results of the Harford County "canvas" demonstrating the series of anomalies found to exist by investigators, 8/1/22.

74.  But this result, a conclusion of no vote security at all does not stand alone. The expansion of the drop box use and the also admitted (by Frederick County) that the surveillance cameras at drop boxes ( 8 in the previous election, of 2020, are not owned or maintained by the County and further none of the cameras were even checked during the previous election wherein the lead plaintiff herein gave eyewitness testimony of volume stuffing of drop boxes.

75.  It has also been recently discovered that flawed ballots are "re-created", i.e. Entirely fabricated on new paper, not by the voter, but by members of the purportedly unbiased election board or its apparently contract employees by purportedly unbiased

"election personnel".

76.  Exhibit 9, Surveillance cameras in Harford County did not have the capability to retain the (tape) footage.

77..  But this process totally by-passes the supposed and lawful essence of the election process.  The vote is not secure, and the result is only exactly what the election governmental managers want those results to be, a totally fixed election with the sanctity of a secure secret vote gone, forever or not, depends upon the outcome of this case.

78.  Accordingly, the immediate and irreparable harm is occurring, right now by the creating and distribution of Ballots to anyone requesting a ballot.  Exhibit #6 and #7 are  compilations of the Requests for Ballots that were made and distributed to those individuals for the 2022 and 2020 elections to date.  This procedure is an outrage violation of all of the principles of election security and must be an initial effort to subvert the system.   Exhibit # 6, contains data from the account of the Request for ballots which contain the official records of the Maryland State Board of Elections, as excerpted from its records, and reported on the internet and in the Baltimore Sun paper on or about July 11, 2022. The Maryland Election Board are using a totally corrupted non-secure election system methodology. There is no chain of custody, no validation for active voters, and the ERIC system for flagging departing Marylanders which triggers the availability for utilization for a harvested ballot.

79.  **NOTICE OF INTENT TO REQUEST A CLASS OR CLASSES OF NAMED CLASS REPRESENTATIVES**:

Approximately one named class representative is expected to be selected to represent each political subdivision of the State of Maryland, and similarly, for each state, to act for themselves and a class (or classes) of all other citizens of every qualified vested voter of Maryland and all other persons, in Districts across the Country, similarly situated, as a F. R. Civ. P. Rule 23, class and/or, Alternatively an Opt-In collective action, or both.

80. **THE CLASS(ES) OF PLAINTIFFS:**

This case is a Federal Claim's Multi-District RICO Federal Rule of Civil Procedure, Rule 23, Class Action. Also, alternatively, a Collective Action by a large class group, or alternatively an Opt-In collective action Citizen/Voters.

**81. MOTION FOR A PRELIMINARY INJUNCTION; AND/OR RENEWAL OF MOTION FOR AN EMERGENCY TRO, TO PREVENT SPOILAGE OF ELECTION CRITICAL ELECTION MATERIALS BY BOARDS OF ELECTIONS, BOTH COUNTY AND STATEWIDE:**

**A.** Plaintiffs Hereby Request an Extraordinary Emergency Hearing on Preliminary Injunctive Relief, to Require, Permanent Preservation of Evidence of the Ballots, Envelopes and All Related Election Records, Both Financial and Operative, Related to the Presidential Election of 2020, under Penalties of a Finding of Violation of Felony Spoilation of Federal Election Materials.

**B.** The revelations contained in this First Amended Complaint, including the existence of a secret system of databases and database controls for manipulating votes and vote counts shall be destroyed, unless all such materials existing at the Maryland

-28-

State Board of Elections, and, also to the extent any local county Board of Elections used such materials.

**C.**   Now, critical facts regarding the alleged existence of an unlawful database control system operating in the State of Maryland coupled with the service of all materials upon the State of Maryland, through its Attorney, and the looming cut off date of September 3, 2022 for destruction of materials from the 2020 election have radically changed the danger of spoilage.  This change in the  degree of concern with spoilage has become, likely critical to this entire case.

**D.** Without a forthwith Protective Order, reminding Defendants of the duty to preserve evidence, coupled with extension of the currently effective evidence preservation date of September 3, 2022 will undoubtedly result in destruction of trial evidence.  That event, if it occurs will likely determinative of an unjust result in this case.

**E.**   That result shall be catastrophic in result, not just unjust.  It shall be a message to all Traitors that they have a defacto license to do whatever the perpetrators of the frauds herein wish, forever regarding rules of law, and destruction of evidence, with irrevocable and irrecoverable harm.

**F.**   The evidence of malfunctions will be forever lost from recovery. Accordingly the preservation Order included in a Temporary Restraining Order should issue, postponing destruction of all election materials pending further Order of Count.

82.  Linked to the preservation of evidence, and considering the great benefits of additional, easily obtainable evidence Plaintiffs Request Permission immediately upon service of process, to Issue 3 to 6  Subpoenas for Documents and 2 Rule 30(b)(6) deposition notices for each County or voting jurisdiction in Maryland.

This Request for Documentary Evidence Production via Subpoena, and 30(b)(6) testimony supporting document production information, is Intended to Produce Documents and Testimony which shall, be presented at the Initial Hearing on a Preliminary Injunction, shall either produce overwhelming and definitive proof of the actual fraudulent facts and the magnitude thereof or not, in each of these 21 counties and elsewhere, every voting jurisdiction im Maryland, and likely every State, resulting in the massive election fraud which, now, has become impossible to deny existed.  The use of the subpoena power of the Court will greatly simplify and clarify the Injunction presentation and clarify the interests of truth and justice.

A draft Preliminary Injunction Order shall be produced forthwith upon conclusion of the hearing on a preliminary injunction.  The Honorable Court is urged to use its emergency powers to set this hearing before September 3, 2022 to avert loss of critical determinative evidence.

In the event this Order is not Granted, all election materials, including Envelopes and Ballots, and financial records are subject to destruction, pursuant to 52 U.S.C. § 20,701.

Undersigned Counsel certifies pursuant to F. R. Civ. P. Rule 65 (b)(B) that in several of the voting jurisdictions, repeated request by Plaintiffs utilizing normal informal and PIA methods have elicited oral or non responsive answers, strongly indicating that preservation method are already being violated, or de facto adherence to that law was never followed in the first instance.  Therefore further destruction of key evidence is likely and expected to occur without, or even in spite of an Injunction Order.

For this reason an injunction should be issued with the normal expiration date of 90 or 180 days, subject to renewal as per Rule 65.

## V.  CONCLUSION

A.  For all of the above reasons either a expedited hearing on a Preliminary Injunction should be granted, as needed to extend the statutory destruction date for Election materials and financial records of September 3, 2022, renewable upon application, should be granted.   Further permission for the issuance of 5 Notices of F. R. Civ. P.30(b)(6) depositions is granted.  Attachment A is a draft Temporary Restraining Order.

As to the accompanying request for permission to take several Rule 30(b)(6) depositions, the Court should limit quashing of production of materials requested, incident  to reasonable, substantial and material reasons move to quash any Notice of Deposition upon a demonstration of substantial burdensomeness or other just cause shown.

-31-

Because of the complexity of the alleged frauds, Plaintiffs expect to detail the preparation of a proposed draft of the Preliminary Injunction is respectfully reserved until after the evidentiary heating on the Injunction itself, or as combined with a trial on the merits.

## VI.  ADDITIONS TO CONCLUSIONS BASED UPON NEWLY DISCOVERED EVIDENCE AND CONCLUSIONS TO BE DRAWN THEREFROM

Exhibit #6 is attached.  That information purports to show that the Board received and responded to requests for official election Ballots.  The responses contained an official ballot with the requestor's name inserted, ready for filing.  Exhibit #6 was apparently prepared by Board employees, and contains data which appears to admit that call-in or on-line requests for a Ballot, later to be used by the receiver in the form furnished by the Board would be eligible for voting, with the voters name already inserted on the ballot.  Presumably some of these would be placed into a drop box.  Whether a correct registered voter or not may have thereby received the Ballot and later present it is not traceable and allows for uttering of a ballot by Department of Election employees.  This is because there is no control or chain of custody for the ballot itself.  This also explains the source of the hundreds of thousands of ballots known to be false in the 2020 election.

And now it is happening again.   Whether or not the requester, he or she, is an actual qualified voter under the laws of the State is also wide open and unverifiable.

-32-

Once this occurs, no amount of observation or after the vote auditing can correct the not just flawed results, but an entirely complete and effective corruption of the election process, system and results.  For this reason, a declaratory judgement is necessary to recapture the integrity of the entire election process in Maryland.  And only then can a secure and valid count be made.  This injunctive relief is vital to the survival of every citizen's power of the vote, and indeed, our entire system of government.

At the hearing on a preliminary injunction, after a short period of obtaining Trial Proof if so demonstrated these verified allegations, the system  may be, under the guidance of constitutional constraints entirely correctable.  However, if a correction in system methodology and control does not occur, the absolute corruption of this process succeeds and our way of life is doomed.

The fabrication of Ballots and lack of security are demonstrated by this evidence, from the time of the ballot issuance and printing at the very start of the election process proceeding in each step downstream in the election collection and summarization process.  This entire process creates irreparable harm, the denial of an effective vote by unsuspecting citizens.  Moreover, the greatest part of each aspect of the conspiratorial and fraudulent conduct has been admitted by the perpetrators.  The only real question remaining is whether or not the Court, here the protectors of citizen's constitutional rights will act, or merely allow this disaster to our Republic to unfold to extinction, along with its honest and law-abiding citizens.

-33-

That process, now firmly imbedded in the election  system, in Maryland and elsewhere, includes the Fabrication of Ballots, Drop Boxes Unattended, and without the Purported Security of any effective Camera Surveillance and follow up when fraud or errors occur.   During this Entire Process there is no Fair Basis for the Existence of a Registered Voter.  And now, the corrupted Board, allows any person requesting a Ballot, for any other person, to have their way with the entire State and later, National Election.

Exhibit #6, therefore and the preceding Exhibit #7 should be taken as  verified evidence demonstrating without a shadow of a doubt that the system is wide open to fraud, malfeasance and error it is self evident that no verifiable or reliable system can possibly produce reliable and accurate results.  This situation is completely intolerable and unacceptable and must be corrected forthwith for all of the foregoing reasons.

These records demonstrate that a Mere Request for a Ballot over the Internet is Enough to receive the right to vote.  This shocking fact, standing alone, is sufficient to corrupt and disqualify integrity of the entire system.  And also to demonstrate the element of immediate and irreparable harm by violating the Constitutional rights of every citizen in every state and county where applicable.  And this false corrupted security picture is piled upon the also recently discovered Use of a Corrupted ERIC System to "Harvest" Known Departed or Deceased parties Gleaned from the MVA and automated residency motor vehicle and other automated citizen records across the United

States of America.

And now, as new evidence comes the astounding Nation-wide existence of an intentionally created and usable slush fund of harvested ballots, usable at will from foreign sources manipulating our election counts, by insertion of these fake vote, wherever and to whatever extent needed for the perpetrators to falsely prevail.  This fraudulent result simply cannot be allowed to stand.


### VII.  CLAIMS FOR RELIEF, LEGAL, EQUITABLE, MANDAMUS AND PUNITIVE:
-----------------------

### (AGAINST MARYLAND FOR THE FAILURE TO PROTECT THE CITIZENRY'S  INDIVIDUAL AND COLLECTIVE RIGHTS, CRIMINAL FORFEITURE'S AGAINST ALL CORPORATE AND INDIVIDUALS WHO PERFORMED THE FRAUDS OR AIDED AND ABETTED SAME. BOTH ACTUAL, LEGAL, EQUITABLE AND PUNITIVE):

A.  A Declaratory Judgment of a Constitutional And/or Common Law Fraud Is Hereby Requested from this Court or a Jury, if Applicable.

B.  A Jury Trial Is Demanded for All Claims for Which a Jury Demand Is Allowed by Law, and to Determine the Relief, Both Criminal, Civil, Punitive and Exemplary to Be Assessed by this Court.

C.   These fake and corrupted systems are in use throughout the entire Country. They must be scrapped and never used again.  Replacement should be as soon as possible, with equitable and truthful systems governed by audited and controlled results free from

political taint and controlled and audited by a non-political arm of the Federal Judicial System.

D. The use of these demonstrated to be dishonest systems and measures, are no less than Treason, and anathema to our way of life. and, plaintiffs are certain that the Court, and any jury convened in this State, will agree. Criminal and civil penalties should be assessed with criminal fines and sentences commensurate with the magnitude of the wrongs committed, but not less than existing criminal sentencing guidelines, such that no repetition of this situation will ever again occur in this Country.

Respectfully submitted,

## VIII.  JURY DEMAND

Plaintiffs hereby demand a Jury Trial for all claims, damages and issues, for which a jury trial is available for any issue of fact or law. Further, Plaintiffs demand a Grand Jury be convened to investigate and act upon all matters for which the Constitution of the United States makes such relief available.

## IX.  DEMAND FOR INJUNCTIVE AND REMEDIAL RELIEF

Plaintiffs demand equitable, legal, remedial and injunctive relief designed to make all plaintiffs whole and legal relief to punish the wrongdoers, should any RICO Entity, or a group of them be found to exist by the Court or, if allowable under law, the Jury, whether civil or criminal. Plaintiffs pray, that the Honorable Court consider the irreparable harm to the perceived integrity of our Great Nation, and its proud citizens, and

their progeny, who will continue to suffer such irreparable harm in the event this Court fails in its perceived duty by these plaintiffs, and the host of others, born and unborn, who shall suffer egregious harm if the wrongs merely outlined in this complaint are allowed to persist and prevail.  These facts utterly destroy the rights to freedom and equality of power flowing from the creator which are the now shaken foundations of our great Constitution.

## X.  VERIFICATION

I, Lewis T. Porter, am a named plaintiff in this case, and I am over the age of 18, a Citizen of the State of Maryland, and otherwise qualified to testify before this Court;  I hereby swear under the penalties of perjury that all of the facts appearing herein, and as attached to this Complaint, including Exhibits 1-7, but excluding the statistical materials pertaining to the Expert Population and Data Base testimony, of which I have no expert knowledge, and Requests for Injunctive relief are true and correct as stated and each evidentiary attachment hereto is a genuine document to the best of my current, knowledge, information and belief.

 Respectfully submitted,

*Lewis T. Porter*, Electronic Signature, Plaintiff/ Investigator,
Secretary Maryland 20-20 Watch
Lewis T. Porter,  June 28, 2022, as Amended July 18, 2022, and August 19, 2022

-37-

Respectfully submitted,

*Walter T. Charlton*, Electronic Signature, June 28, 2022, And as Amended, July18, 2022, And July 25, and August 19th, 2022,.


Walter T. Charlton, Esq.,
 DC Bar # 186940,
United States District Court Bar, District of Maryland  # 07638
Walter T. Charlton & Associates, CPA/Attorney
11213 Angus Way, Woodsboro, Maryland 21798
Telephone, 410 571 8764, email, charltonwt @ comcast.net
Post Office Box # 370, Woodsboro, Maryland 21798

## INDEX OF ATTACHMENTS

Attachment A- Draft Temporary Restraining Orders (Originals- (Denied)
          Included for Information Purposes Only....................................................

Motion for a Preliminary Injunction and Permanent Injunctive
          Relief , Deferred Pending Scheduling and Initial Discovery....................

Renewal Request for Emergency TRO, Regarding September 3, 2022
          Destruction Deadline for Election Materials and Data Bases................

Exhibit # 1     Grants to 21 Maryland Counties and Baltimore City, ... $ 6, 245,797.


Exhibit # 2 .1 Declaration of Eye-Witness to Ballot Stuffing, Lois Ann Gibson....

Exhibit # 2.2 and 2.3  Declaration of Two Witnesses, ...........................................

Exhibit # 3     Declaration of Newly Non-Resident, Kurt Kolb, regarding
                        Automated Voter Harvesting, ...............................................

Exhibit # 4     Frederick and Carroll County Grant Contracts, with Terms ...........

Exhibit # 5     Howard County, List of Payments of Exact Money Dollars
                Received in Grants from Chicago (Purported 501(c)(3) Charity,
                Center for :Tech and Civic Life, (CTCL) $ 688,226, distributed
                in Same Amount, $ 688,226, to List of about 730 Named Persons
                also Furnished from disbursement Records of Howard County .....

Exhibit # 6     Mail-In Ballot Requests by County, July 17, 2022, 508,024..........

Exhibit # 7     Mail-in Ballot Requests by County, November 3, 2020, 1,688,480...

Exhibit # 8     Verification of Harford County Canvas of 2020, Presidential
                        General Election, through February 2022..........................

Exhibit # 9,    Verification Report, Ballot Images and Fake Surveillance
                        Camera Report, May 26, 2022.............................................

Exhibit # 10    Curriculum Vitae,  Dr. Douglas G. Frank.

## CERTIFICATE OF SERVICE

THESE MATERIALS, BOTH ORIGINAL COMPLAINT AND MOTIONS FOR INJUNCTIVE RELIEF, BOTH VERSIONS, AND THE COURT'S ORDER OF JULY 6, 2022. AND THE RULE 59(e) MOTION AND ORDER, denying that Motion,  WERE DELIVERED BY AGAIN TO ALL DEFENDANTS, EXCEPT CTCL, WHICH WAS MAILED PRIORITY MAIL, RETURN RECEIPT REQUESTED.  ALL STATE AGENCIES WERE SERVED BY THE APPROVED ELECTRONIC MEANS, for each State agency, ON OR ABOUT AUGUST 24th , 2022.

Emails to: Brent.Bolea1@Maryland.gov; Michael.Friedman@Maryland.gov; OAG@OAG.State.Md.US

THE FIRST AMENDED COMPLAINT, AND THE IMBEDDED RENEWAL OF THE MOTION FOR A TRO, WERE DELIVERED BY ELECTRONIC EMAIL, ON AUGUST 19, 2022.

*Natalie Melendez Abbas.*

_____

Natalie Abbas, Paralegal, August 19, 2022.