**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| LOIS ANN GIBSON, *et al.* | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.: 1:22-cv-01642-GLR |
| FREDERICK COUNTY, MARYLAND, *et al.* | * | |
| | * | |
| Defendants | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF CALVERT**
**COUNTY, MARYLAND AND WASHINGTON COUNTY MARYLAND'S**
**MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

BOARD OF COUNTY COMMISSIONERS OF CALVERT COUNTY and WASHINGTON COUNTY, two of the Defendants, by and through their attorneys, KARPINSKI, CORNBROOKS, & KARP, P.A. and KEVIN KARPINSKI, respectfully submit this Memorandum in Support of their Motion to Dismiss and further state:

**BACKGROUND**

This case involves claims brought pursuant to the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 to 1968 and related federal and state law claims. Plaintiffs' claims are against the Center for Tech and Civic Life ("CTCL"), the State of Maryland, the State of Maryland Office of the State Prosecutor, the State of Maryland Board of Elections, several

Maryland jurisdictions,[1] and those jurisdictions' Board of Elections (hereinafter collectively referred to as "the Maryland Defendants"). Far from a model of clarity, one could discern that the following causes of actions are being plead: violation of the RICO Act, violation of the due process clause of the 14th Amendment, violation of state and federal election laws, violation of federal tax laws, fraud, money laundering, bribery and conspiracy to violate federal and state civil rights laws. *See generally* Am. Compl.

The allegations appear to arise out of a series of events dating back to 2016. First, shortly before the 2016 Presidential Election, an "informal" Maryland organization conducted a nondescript investigation that purported to reveal "a series of anomalies" in Maryland's voting practices. Am. Compl. 1. Next, on the date of the 2020 Presidential Election, a Maryland volunteer election judge, named-Plaintiff Lois Ann Gibson, observed a man filling a ballot box with "what appeared to be a large number of ballots." *Id.* Finally, the allegations arise out of grants issued from the Center for Tech and Civic Life to the jurisdictions named as defendants. *Id.* at 2. Plaintiffs allege that the Maryland Defendants received money from CTCL, a Chicago non-profit organization, for the purposes of unlawfully conspiring to impact the results of the 2020 election. *Id.* at 5.

The Complaint was filed on June 28, 2022. In it, Plaintiffs also made a Motion for a Temporary Restraining Order, which sought to require Defendants

---

[1]    These jurisdictions include Baltimore City and the following counties: Allegheny, Anne Arundel, Baltimore County, Calvert, Caroline, Carroll, Cecil, Charles, Dorchester, Frederick, Garrett, Harford, Howard, Kent County, Montgomery, Prince George's, Queen Anne's, Talbot, Washington and Wicomico.

to preserve certain statutorily protected election materials and to permit Plaintiffs to engage in expedited document and testimonial discovery. *See generally* Original Compl., Ct. Order at 1 (July 6, 2022). The Court denied Plaintiffs' Motion on July 6, 2022. The Amended Complaint was filed on August 19, 2022.

## STANDARD OF REVIEW

### I.   STANDARD OF REVIEW FOR MOTION TO DISMISS PURSUANT TO RULE 12(B)(1).

"When a motion under Fed.R.Civ.P. 12 is 'based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject-matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" *Jeffrey Banks, Lrd. v. Jo. A. Bank Clothiers, Inc.*, 619 F. Supp. 998, 1001 n. 7. (D. Md. 1985) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1350, at 548 (1969)). A defendant may challenge a federal court's ability to hear a plaintiff's claim for "lack of subject-matter jurisdiction" by way of motion to dismiss under Rule 12(b)(1). *Ryman v. First Mortg. Corp.*, 443 F. Supp. 3d 642, 649. (D. Md. 2020). A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1) because standing implicates and limits federal courts' subject-matter jurisdiction. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 207 (4th Cir. 2017) (citing U.S. Const. art III, § 2).

A plaintiff bears the burden of establishing standing. *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215,

215, (1990)). Trial courts "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (citing *Jenkins v. McKeithen*, 395 U.S. 411 (1969). At the pleading stage for a motion to dismiss, "general allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). However, "the party invoking the jurisdiction of the court must include necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009).

In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss. *Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir.2009). However, "[w]hen a defendant raises standing as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, . . . the district court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

As argued further herein, Plaintiffs failed to establish this Court's subject-matter jurisdiction over this case because they have not plead the requisite factual allegations to give them standing.

## II.  STANDARD OF REVIEW FOR MOTION TO DISMISS PURSUANT TO RULE 12(B)(6).

A defendant may test the legal sufficiency of a plaintiff's claims by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Rule 12(b)(6); *see Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (applying Fed. R. Civ. P. 12(b)(6)).

In *Ashcroft v. Iqbal,* 556 U.S. 662 (2007), the Supreme Court stated that a complaint must contain more than "a threadbare recital of the elements" of a cause of action to survive a motion to dismiss. 556 U.S. at 678. A complaint must allege facts that support the plausibility of the plaintiff's claims. *Bell Atl. Corp v. Twombley*, 550 U.S. 544, 570 (2007) (holding that a complaint must "state a claim to relief that is plausible on its face"). Factual allegations are viewed in the light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d at 1134. A court, however, "is not required 'to accept as true a legal conclusion couched as a factual allegation,' or a legal conclusion unsupported by factual allegations." *Taylor v. First Premier Bank*, 841 F. Supp. 2d 931, 993 (E.D. Va. 2012) (internal citation omitted).

The instant Complaint and Amended Complaint are devoid of such facts, relying instead on legal buzzwords and unsupported conclusions. While Federal

Rule 8(a)(2) does not require a plaintiff to provide "detailed factual allegations[,]" *Twombley*, 550 U.S. at 555, a complaint must provide the court with enough information to nudge plaintiff's "claims across the line from conceivable to plausible." *Twombley*, 550 U.S. 544, 570. The Complaint and Amended Complaint before the Court fail to advance Plaintiffs' claims, and amount to no more than the "naked assertions of wrongdoing" that the Fourth Circuit rejected in *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal citation omitted) (describing the problems that led to the Supreme Court's decisions in *Iqbal* and *Twombley* to emphasize portions of the Federal Rules of Civil Procedure that "permit courts to evaluate complaints early in the process.").

## ARGUMENT

### I.   PLAINTIFFS LACK STANDING TO PURSUE THIS CLAIM.

The question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. at 498. "In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Id.* Regarding the constitutional limitations, plaintiffs must show a case or controversy between themselves and defendants. U.S. Const. art. III, § 2. Three elements must be established to meet the constitutional minimum requirements of standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party

not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs of Wildlife*, 504 U.S. at 560–61 (internal citations omitted) (cleaned up).

When seeking injunctive relief, "the 'injury in fact' element of standing requires more than simply an allegation of defendant's prior wrongful conduct." *Harty v. Luihn Four, Inc.*, 747 F.Supp.2d 547, 551–52 (E.D.N.C.2010) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Rather, plaintiffs must show a "real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." *Lyons*, 461 U.S. at 111.

Plaintiffs have not claimed to suffer a concrete, particularized injury in fact. They purport to be injured by "systemic failures of election integrity" that "threaten the stability of the Republic" and "threaten to destroy all hope of any fair election process for all time." Original Compl. at 53, ¶ 81. Plaintiffs' prose regarding principles of democracy and republican government do not purport any actual injury. In other words, their "injuries" are "conjectural" and "hypothetical," which is insufficient to achieve constitutional standing.

Plaintiffs have also failed to allege that their "injury" would likely be redressed by a favorable decision from this Court. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (citing *DaimletChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006). Redressability cannot be merely "speculative." *Lujan*, 504 U.S. at 561.

Plaintiffs assert that their requested injunctive relief will unveil a pattern of election fraud and that the Court will "correct[] the existing election system to ensure election integrity for all citizens in the future." Am. Compl. at 7, Original Compl. at 4. Not only are those speculative requests, but they also do not provide any connection between those requests and Plaintiffs' "injury" being redressed. If the grants from CTCL to the Maryland Defendants were used to fund their alleged RICO enterprise, as Plaintiffs state, their sought relief would not remedy those actions or the injuries they claim to suffer.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs' primary claim is that the Maryland Defendants and CTCL participated in a RICO conspiracy to defraud the 2020 election. The RICO Act makes it unlawful to engage in certain "prohibited activities," which are defined in 18 U.S.C. § 1962. As an element of each of those activities, there must be proof of either "a pattern of racketeering activity" or "collection of an unlawful debt" for the purposes of controlling an enterprise, conducting the affairs of an enterprise, deriving income from an enterprise or conspiring thereto. 18 U.S.C. § 1962(a)-(d). RICO defines "racketeering activity" as "any act or threat involving" specified state and federal law crimes. 18 U.S.C. § 1961(1). A "pattern" is established after "two acts of racketeering activity" that take place within a 10-year period. 18 U.S.C. § 1965(5). RICO provides for not only severe criminal penalties, but also for damages, costs and attorney's fees if found to have violated the RICO Act in a private cause of action. 18 U.S.C. §§ 1963 and 1964.

As a threshold matter, Plaintiffs' claims fail because their requested

remedy is not authorized by 18 U.S.C. § 1964(c). Original Compl. at 20, Am. Compl. at 8. They request a preliminary injunction to preserve certain election records. However, injunctive relief is not an available remedy for violations of the RICO Act. "Section 1964 does not authorize private RICO plaintiffs to sue for prospective injunctive relief." *Hengle v. Treppa*, 19 F.4th 324, 353 (4th Cir. 2021), *cert. dismissed sub nom. Asner v. Hengle*, 212 L. Ed. 2d 795, 142 S. Ct. 2093 (2022) and *cert. dismissed*, 212 L. Ed. 2d 795, 142 S. Ct. 2093 (2022). Plaintiffs' requested prospective injunctive relief therefore is barred. Consequently, their suit must be dismissed.

Next, while Plaintiffs assert the legal conclusion that Defendants engaged in a RICO conspiracy, they fail to plead any facts that meet the elements required to state a claim for which relief may be granted. "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985). As a fifth element, plaintiffs must also allege a "compensable injury" as a result of the defendants causing injury to their business or property. *Id.* at 497.

To establish proof "of an enterprise," a plaintiff must show that a "person" and the "enterprise" are distinct entities. *Chambers v. King Buick GMG, LLC*, 43 F. Supp. 3d 575, 588 (D. Md. 2014) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). A "person," whether an individual or corporation, must be separate from the "enterprise," which is the "tool, through which the RICO violation occurred." *Id.* The existence of an enterprise requires proof of 1) an ongoing organization; 2) containing associates that function as a

unit; and 3) exists "separate and apart from the pattern of activity in which it engages." *Proctor v. Metro. Money Store Corp.*, 645 F.Supp.2d 464, 477-78 (D. Md. 2009).

To demonstrate a "pattern of racketeering activity," a plaintiff must plead at least two acts of racketeering activity. *Am. Chiropractic Assoc., Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233 (4th Cir.2004) (citing 18 U.S.C. § 1961(5)). As mentioned above, those acts are defined under 18 U.S.C. § 1961(1). Further, a plaintiff must allege facts indicating "'that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity.'" *Chambers*, 43 F. Supp. 3d at 599 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)).

Lastly, plaintiffs must show that the RICO predicate offense was both the actual and proximate cause of the injuries to their business or property. There must be "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.* at 271.

Both the Original and Amended Complaints fail to allege plausible facts to satisfy any of these elements. They do not show that an "ongoing" enterprise existed between any of the Maryland Defendants and CTCL, distinct from the activities they allege they engaged in. Plaintiffs fail to allege racketeering activity—much less a pattern of it—as defined by 18 U.S.C. § 1961(1). They assert that defendants committed election fraud and tax fraud, neither of which

are "acts" that give rise to a RICO violation. Lastly, Plaintiffs have not alleged a "compensable injury" as result of defendants injuring a "business or property." 18 U.S.C. 1964(c). Plaintiffs purport to be injured by "systemic failures of election integrity" that "threaten the stability of the Republic" and "threaten to destroy all hope of any fair election process for all time." Original Compl. at 53, ¶ 81. These are not injuries to business or property and are far too remote to satisfy the proximate cause requirements that the RICO Act requires.

## III. CALVERT COUNTY AND WASHINGTON COUNTY ARE NOT PROPER PARTIES AND HAVE NO RESPONSIBILITY FOR THE OVERSIGHT OF ELECTIONS.

For the reasons set forth more fully herein, Calvert County and Washington County are not proper parties to this case. Elections, within the State of Maryland, are subject to the jurisdiction of the State Board of Elections, oversight by Local Boards of Elections, the Election Director and State Administrator of Elections. With respect to the supervision of elections, Calvert and Washington Counties play no affirmative role and therefore, cannot be held liable for any wrongdoings that allegedly occurred within the context of elections.

The State Board of Elections ("State Board") is comprised of five members, each serving a four-year term, who are appointed by the Governor. Md. Code, Election Law ("EL") § 2-101(a), (c) and (f). The State Board is generally responsible for overseeing the day-to-day operations of elections, and is required by statute to, among other things:

> (1) supervise the conduct of elections in the State;

> (2) direct, support, monitor and evaluate the activities of each local board;

(3) have a staff sufficient to perform its functions;

(4) adopt regulations to implement its powers and duties;

(5) receive, or in its discretion audit, campaign finance reports, account books and records kept under § 13-221 of this article, independent expenditure reports filed and records kept under § 13-306 of this article, electioneering communication reports filed and records kept under § 13-307 of this article and statements filed and records kept under § 14-105 of this article;

(5) appoint a State Administrator in accordance with § 2-103 of this subtitle;

* * *

(8) canvass and certify the results of elections as prescribed by law;

* * *

(10) subject to § 2-106 of this subtitle and § 13-341 of this article, receive, maintain and serve as a depository for elections documents, materials, records, statistics, reports, certificates, proclamations and other information prescribed by law or regulation;

EL § 2-102(b). The State Board also appoints the State Administrator, with the advice and consent of the Maryland General Assembly. EL § 2-103(b)(1). The State Administrator is required to "perform all duties and exercise all powers that are assigned by law to the State Administrator or delegated by the State Board." EL § 2-103(b)(5). Of these duties, the State Administrator is tasked with supervising the operations of local boards of elections (the "Local Boards"). EL § 2-103(b)(4).

In addition to the State Board, there also exist Local Boards for each County within the State, as well as Baltimore City. EL § 2-201. The number of members on each Local Board varies by jurisdiction. *See* EL § 2-201(b). Members

of Local Boards are, like those of the State Board, appointed by the Governor. EL § 2-201(g). Each Local Board is "subject to the direction and authority of the State Board and is accountable to the State Board for its actions in all matters regarding the implementation of the requirements of this article and any applicable federal law." EL § 2-201(a)(2). Among other statutorily defined responsibilities, Local Boards are responsible for: (1) "oversee[ing] the conduct of all elections held in its county and ensur[ing] that the elections process is conducted in an open, convenient and impartial manner;" (2) "serv[ing] as the local board of canvassers and certify[ing] the results of each election conducted by the local board;" (3) "establish[ing] and alter[ing] the boundaries and number of precincts in accordance with [EL] § 2-303 of this title, and provid[ing] a suitable polling place for each precinct, and assign[ing] voters to precincts;" and (4) "maintain[ing] and dispos[ing] of its records in accordance with the plan adopted by the State Board under [EL] § 2-106[.]" EL § 2-202(b). Further, each Local Board is statutorily tasked with the responsibility of appointing an Election Director to oversee and supervise the operations of a Local Board. *See* EL § 2-202(b)(2).

In sum, the State Board is a State entity that is statutorily tasked with supervising the general operations of elections within the State. The State Board supplements these duties through the Local Boards. All members of State and Local Boards are appointed by the Governor. The State Board is responsible for directing, supporting, monitoring and evaluating the activities of Local Boards. Each Local Board is subject to the direction and authority of the State Board and

is accountable to the State Board for its actions. In short, the State Board, Local Boards, the State Administrator of Elections and the Election Director are responsible for the oversight and management of elections within Maryland, Calvert County and Washington County play no active role in this regard.[2]

The only responsibility that individual counties have with respect to Local Boards is to appropriate funding for the operations of Local Boards. *See* EL § 2-203 (indicating that Counties must appropriate funds essential to the operations of Local Boards, including: (1) personnel expenses; (2) polling place operation expenses; and (3) expenses relating to supplies and equipment used by the Local Board). *Id.* Aside from this ministerial duty, individual counties have no responsibility in overseeing the operations of elections, as this duty falls upon the State Board, Local Board, the Election Director or State Administrator of Elections. *See supra*.

For those reasons, Calvert and Washington Counties are not proper parties to this case. The only responsibility they maintain with respect to elections is appropriating sufficient funding to cover the operations of the Local Boards. Thus, because Calvert County and Washington County have no

---

[2] Generally, in situations where an individual or entity challenges an election within Maryland, such actions are generally brought against the State, the State Board, Local Boards or the State Administrator, and not the local jurisdiction corresponding to a particular Local Board. *See Lamone v. Lewin*, 460 Md. 450, 190 A.3d 376 (2018); *Fritszche v. Maryland State Bd. of Elections*, 397 Md. 331, 916 A.2d 1015 (2007); *Liddy v. Lamone*, 398 Md. 233, 919 A.2d 1276 (2007); *Schade v. Maryland State Bd. of Elections*, 401 Md. 1, 930 A.2d 304 (2007); *Roskelly v. Lamone*, 396 Md. 27, 912 A.2d 658 (2006); *Lamone v. Capozzi*, 396 Md. 53, 912 A.2d 674 (2006).

responsibility or oversight into the election presently challenged by Plaintiffs, they cannot be held responsible for the actions of the State through the State Board, the State Administrator of Elections, the Election Director or Local Board.

In any event, Plaintiffs fail to meet their pleading burden with respect to Calvert County and Washington County, as the Amended Complaint is devoid of any factual averments—aside from meritless conclusory assertions—involving or implicating any action by Calvert County and Washington County.

## IV. PLAINTIFFS FAIL TO SET FORTH ANY FACTUAL AVERMENTS INVOLVING ACTIONS BY CALVERT COUNTY AND WASHINGTON COUNTY.

Viewing the Amended Complaint in a light most favorable to Plaintiffs, it nonetheless fails to set forth sufficient factual assertions with respect to Calvert and Washington Counties and the Amended Complaint must be dismissed for that reason. As indicated above, whether a complaint survives a motion to dismiss is determined under the plausibility standard, *i.e.*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1966 (2007)). A court may find "facial plausibility" where a plaintiff supplies the court with sufficient factual content that permits the court to draw a reasonable inference that a defendant is liable for the alleged misconduct. *Id.* Plaintiffs fail to satisfy this rather lenient pleading standard with respect to the allegations Plaintiffs bring against Calvert and Washington Counties.

The Amended Complaint itself does not contain any specific reference to

Calvert and Washington Counties, aside from the inclusion of those two jurisdictions in the caption in this matter. The Amended Complaint appears to contend that all of the counties involved spent those funds, received by the Chicago entity, to essentially pay-off covert workers to "harvest votes." ECF 1, p. 15–16. Plaintiffs' allegations are based upon information obtained from Frederick, Carroll and Howard Counties. ECF 1, p. 15. Said information merely demonstrates that those counties allegedly received said grant funding and paid certain funds to certain individuals.[3] *See* ECF 1-5, p. 1–14. Although the Amended Complaint presents an impermissible logical leap and fails to satisfy the plausibility standard with respect to those three named counties, which Plaintiffs have allegedly already investigated, the Amended Complaint entirely fails to set forth any factual averments concerning Calvert and Washington Counties' involvement in the matters complained of therein.

Simply put, Plaintiffs do not sufficiently allege any tortuous or otherwise illegal conduct on behalf of Calvert County and Washington County. Instead, Plaintiffs set forth threadbare assertions regarding the involvement of other Counties and then ask the Court to conduct a lengthy and impermissible logical leap to arrive at the conclusion that Calvert County and Washington County, in some unidentified manner, had some role in the events about which Plaintiffs presently complain—absent any particularized factual assertions regarding their involvement. In other words, even assuming the contents of the Amended

---

[3] With respect to the disbursement of grant funds to individuals, Plaintiffs have only supplied an itemized list of expenditures with respect to Howard County. *See* ECF 1, p. 67; *see also* ECF 1-5, p. 1–14.

Complaint to be true, Plaintiffs fail to sufficiently allege a plausible claim against Calvert County and Washington County. Instead, Plaintiffs simply allege conclusory and entirely inferential assertions regarding their involvement herein and thus fail to state a claim upon which relief can be granted. Therefore, because Plaintiffs have failed to sufficiently plead their claim against Calvert County and Washington county, this Honorable Court should dismiss Calvert County and Washington County from the instant matter.

## CONCLUSION

For the foregoing reasons, Calvert County and Washington County, Maryland respectfully request that this Honorable Court dismiss with prejudice all claims with respect to them, and that the Court should grant any such other relief as the cause may demand.

KARPINSKI, CORNBROOKS & KARP, P.A.


By: _____/s/ Kevin Karpinski_____
KEVIN KARPINKSI, #11849
120 East Baltimore Street
Suite 1850
Baltimore, Maryland 21202-1617
410-727-5000
kevin@bkcklaw.com
*Counsel for Defendants Calvert County and Washington County*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of September 2022, a copy of the foregoing was electronically filed with notice to:

Walter T. Charlton, Esquire
213 Morgan Street
Washington, DC 20001
***Counsel for Plaintiffs***

Daniel Michael Kobrin, Esquire
Office of the Attorney General
Civil Litigation Division
200 Saint Paul Place
20th Floor
Baltimore, Maryland 21202
***Counsel for Defendant State of Maryland***

    /s/ Kevin Karpinski    
*Counsel for Defendants Calvert County and*
*Washington County*
