IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **LOIS ANN GIBSON, et al.,** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Case No.: SAG-22-1642 |
| v. | * | |
| | * | |
| **FREDERICK COUNTY, MARYLAND, et al.,** | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Presently pending before this Court is Plaintiffs' Motion for a Temporary Restraining Order, Preliminary Injunction, and Acceleration of Trial on the Merits ("Motion")[1]. ECF 37. The Motion seeks to prevent any state agency from declaring a winner of any November 8, 2022 election (or any election thereafter) until the election process is verified free of fraud. ECF 37 at 5. Defendant State of Maryland filed its opposition. ECF 38. Defendant Harford County also opposed the motion, simply incorporating Maryland's opposition into its own. ECF 39. Plaintiffs have filed their Reply. ECF 41. This Court has reviewed the filings and has determined that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021) ("Unless otherwise ordered by the Court, . . . all motions shall be decided on the memoranda without a hearing."). For the following reasons, Plaintiffs' Motion, ECF 37, is denied.

---

[1] The Motion also seeks to create or have this case transferred for multidistrict litigation; however, this Court does not have authority to transfer a case for coordinated or consolidated proceedings. *See* 28 U.S.C. § 1407.

I.  **BACKGROUND**

In July, 2022, Plaintiffs Lois Ann Gibson, Maryland 20-20 Watch, Charlton Scientific Educational and Engineering Foundation Inc., and others[2] (collectively "Plaintiffs") filed a Complaint against a variety of defendants, primarily Maryland counties and the non-profit Center for Tech and Civic Life ("CTCL").  ECF 1 at 1–3.  CTCL is a nonprofit that provided grants to local governments or political subdivisions "exclusively for the public purpose of planning and operationalizing safe and secure election administration."  ECF 1-4 at 1.  Pursuant to the terms of the grant, the counties or subdivisions could use the funds to recruit and train poll workers, pay for polling place rentals and cleaning on Election Day, or pay for vote-by-mail/absentee voting equipment and supplies. *Id.* at 2. The Complaint alleges voter fraud and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act in Maryland and other states across the nation, through the use of CTCL grants and other means. *Id.* at 5.

In conjunction with their Complaint, Plaintiffs filed an initial temporary restraining order ("TRO") to require Defendants to preserve election-related materials for an additional fourteen days to permit Plaintiffs to engage in expedited document and testimonial discovery.  ECF 2.  This Court considered and denied Plaintiffs' TRO because Plaintiffs had failed to allege any immediate harm.  ECF 4 at 1.  Plaintiffs moved for reconsideration, citing new evidence of irreparable harm.  ECF 6.  On reconsideration, this Court again denied the TRO because Plaintiffs' concerns about document destruction were not "based on anything other than speculation."  ECF 7 at 4.  Plaintiffs subsequently amended their Complaint, ECF 9, and many Defendants have moved to dismiss the complaint for failure to state a claim, *see* ECF 14, 18, 21, 23, 25, 26, 29, 31, and 34.

---

[2] Other plaintiffs include "A Committee of Injured Citizens/Voters for Themselves and All Others Similarly Situated," "Any, Presently Unknown State Agency which was Duped by the Multiple Frauds Alleged Herein," and "All Others Similarly Situated Injured Persons."  ECF 1 at 1.

Just after the November 8, 2022 election, Plaintiffs filed the current motion, which again requests a TRO, a preliminary injunction, and an acceleration of the trial on the merits. ECF 37. Plaintiffs argue that the voting system in Maryland is "fatally flawed" and "must be scrapped." ECF 37 at 3. They argue that mail-in ballots cannot be verified because there is a disconnect between the voter and the ballot. *Id.* at 5. They point to past grant money paid to counties in support of election operations as well as alleged inconsistencies in the votes cast in Maryland, and argue that these inconsistencies, "if intentional," present a pattern of RICO violations across the country. *Id.* at 4. Plaintiffs request this Court to enjoin "any state agency from declaring a winner to any election" conducted on November 8, 2022. ECF 37 at 8.

As explained below, Plaintiffs have not presented evidence to justify the issuance of a TRO or preliminary injunction. Additionally, any trial will be scheduled after the resolution of the pending motions to dismiss, so this Court declines to "accelerate" the timing. Plaintiffs' Motion will be denied.

**II.     HEARING**

Preliminarily, the Court declines to hold a hearing on Plaintiff's Motion. "A preliminary injunction preserves the status quo 'pending a final trial on the merits,' while a TRO 'is intended to preserve the status quo only until a preliminary injunction hearing can be held.'" *GlaxoSmithKline, LLC v. Brooks*, No. 8:22-CV-00364-PWG, 2022 WL 2916170, at *1 (D. Md. July 25, 2022) (quoting *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999)).

A hearing for a preliminary injunction "is not required when no disputes of fact exist and the denial of the motion is based upon the parties' written papers." *Fundamental Admin. Servs., LLC v. Anderson*, No. CIV. JKB-13-1708, 2015 WL 2340831, at *1 (D. Md. May 13, 2015); *see,*

*e.g.*, *Hunter v. Redmer*, No. CIV. JKB-15-2047, 2015 WL 5173072, at *1 (D. Md. Sept. 3, 2015) (ruling without a hearing when receiving further evidence would not be helpful); *see also Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893–94 (1st Cir.1988) ("an evidentiary hearing is not an indispensable requirement when a court allows or refuses a preliminary injunction"). This Court has previously cited a well-respected treaty, which explains:

> Even if a party desires to present testimony [as to a motion for preliminary injunction], several federal courts have held that when there is no factual controversy the trial court has discretion to issue an order on written evidence alone, without a hearing. Similarly, preliminary injunctions are denied without a hearing, despite a request for one by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless. This practice is supported by Rule 78(b), which provides that "the court may provide for submitting and determining motions on briefs, without oral hearings," and by the fact that Rule 65 does not explicitly require an oral hearing on a preliminary-injunction motion.

*Fundamental Admin. Servs., LLC v. Anderson*, No. CIV. JKB-13-1708, 2015 WL 2340831, at *1 (D. Md. May 13, 2015) (citing 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2949, at 246–48 (2013)).

In the instant case, the parties' written submissions do not raise a question of fact that must be resolved before the Court may rule on Plaintiffs' motion. Thus, no hearing is required. *See* Loc. R. 105.6 (D. Md. 2021).

### III.  LEGAL STANDARDS

"Temporary restraining orders and preliminary injunctions serve similar functions and are subject to substantially the same legal standards." *GlaxoSmithKline, LLC v. Brooks*, No. 8:22-CV-00364-PWG, 2022 WL 2916170, at *1 (D. Md. July 25, 2022). "A preliminary injunction is distinguished from a TRO only by the difference in the required notice to the nonmoving party,

and by the duration of the relief it provides. . . . Temporary restraining orders are of limited duration, whereas preliminary injunctions are indefinite." *Id.* (internal citations omitted).

A TRO or a preliminary injunction is warranted when the movant demonstrates four factors: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Wilson v. Williams*, 2019 WL 4942102, at *1 (D.S.C. Oct. 8, 2019). The movant must establish all four elements in order to prevail. *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

A TRO, much like a preliminary injunction, affords "'an extraordinary and drastic remedy' prior to trial." *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, 2019 WL 2642838, at *6 (D. Md. June 27, 2019) (quoting *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (stating preliminary injunctive relief is an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances."). Because preliminary injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are particularly disfavored. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Id.*

## IV. ANALYSIS

**A. Likelihood of Success on the Merits**

In support of their Motion and legal claims, Plaintiffs present the following exhibits and evidence:

(1) A letter from Linda H. Lamone, State Administrator of the Maryland Board of Elections, explaining how the Board tests and confirms the accuracy of the State's voting units prior to the election, ECF 37-1, Exh. A;

(2) A spreadsheet of names of Howard County residents who allegedly received payments from CTCL, ECF 1-5;

(3) A summary of an analysis comparing the dates that voters submitted ballots, as acquired by the Maryland Board of Elections, with the dates those voters submitted change-of-address forms, as acquired by the U.S. Post Office, ECF 37-1, Exh. B;

(4) The declaration of Plaintiff Lois Ann Gibson stating that she witnessed an individual place "at least several dozen" ballots in a ballot box in Frederick, Maryland on or around November 2, 2020.[3]

Each of these documents fails to provide evidence of election fraud or a RICO conspiracy.

First, the letter from Ms. Lamone, the State Administrator of the Maryland Board of Elections, plainly contradicts Plaintiffs' assertions. The letter enumerates the multiple actions taken by the Maryland Board of Elections to ensure the validity of Maryland's elections. For example, the letter describes how Maryland election officials test each voting unit before its use in the election, send digital images of every ballot to an independent entity for confirmation of the

---

[3] Plaintiffs also list, "The whistleblower analysis of data errors filed with the Court on November 8th 2022. Exhibit # 2." ECF 37 at 6. To this Court's knowledge, there was no "Exhibit 2" filed by Plaintiffs on November 8th. There are two exhibits attached to Plaintiffs' current Motion, but the two exhibits are labeled A and B. This Court assumes Plaintiffs are referring to Exhibit B, which this Court includes in the list above. Plaintiffs also list: "The kinds and types of fraud admitted by President Biden," ECF 37 at 9; however, Plaintiffs do not provide any specific evidence for this Court to review. Plaintiffs also attached a new exhibit, without further explanation, to their Reply. ECF 41-3. This exhibit, a copy of a presentation asserting mathematical errors in the Maryland 2020 election, contains two hyperlinks to sources that are non-functional and generally appears to rely on less-than-reliable and hearsay sources of information. In sum, it does not provide reliable evidence of organized fraud in the 2022 election.

results, conduct an audit of some of the mail-in ballots before elections are certified, and publish the results and election processes online for review by the public. ECF 37-1.

Second, Plaintiffs present a spreadsheet (reportedly from Harford County's records, ECF 1 at 67) of hundreds of names of Howard County residents receiving payments during the 2020 election. *See* ECF 1-5. Plaintiffs assert that this is a list of "data harvesters or couriers." ECF 37 at 9. Plaintiffs point to the fact that the total amount of these payments equals the grant amount received by Howard County from CTCL. *Id.*; *see also* ECF 1-1. Plaintiffs also note that many of the payments were made in round-dollar amounts, which they assert is "clear evidence that the Grant was of the fee [sic] was for piece-work services for example the rumored 5 or 10 dollars each for ballot delivery." ECF 1 at 18; ECF 9 at 16–17. However, rumors and conclusory speculation are insufficient to support a finding of likelihood of success on the merits. There is no evidence—direct or circumstantial—to suggest nefarious use of these funds.

The acceptance of CTCL grant money is not a violation of federal or state law. In their Second Amended Complaint, Plaintiffs document that twenty-one Maryland counties accepted grant funds from CTCL in the 2020 election. ECF 9 ¶ 4; *see also* ECF 1-1. Plaintiffs assert that the grants disguised payments to individuals to harvest unlawful votes. ECF 9 ¶ 10. However, nothing in the Grant Agreements' language suggests the acceptance or use of these funds violated any law. Indeed, Plaintiffs concede that the transfer of money occurred through "apparently normal official budgeting receipt channels," ECF 9 ¶ 4, and describe the end use of the money "for a particular (purportedly) innocuous and perfectly lawful, usage," *id.* ¶ 6. Thus, the grants are facially lawful, and there is no actual evidence of their illicit use. In 2020, other courts denied TRO motions propounding a similar theory, concluding that no law prevented CTCL from granting money to the counties for the non-partisan purpose of supporting safe elections. *Cf. Iowa Voter*

*All. v. Black Hawk Cnty.*, No. C20-2078-LTS, 2020 WL 6151559, at *4 (N.D. Iowa Oct. 20, 2020); *Election Integrity Fund v. City of Lansing*, No. 1:20-CV-950, 2020 WL 6605985, at *1 (W.D. Mich. Oct. 2, 2020). This Court concludes the same.

Next, Plaintiffs' Exhibit B presents a summary analysis comparing individuals' voting dates to their change-of-address dates. ECF 37-1. The summary only provides a few examples of alleged voter names and dates, but reports larger amounts of inconsistencies are "available upon request." ECF 37-1 at 3. The analysis reports varying inconsistencies, such as twenty-four Maryland voters who changed their mailing address to another state prior to voting in the Maryland 2022 primary election. The report also compares voting and change-of-address dates from the 2020 election. Even assuming this data is accurate, the fact that a voter submitted a change of mailing address does not demonstrate that the voter is ineligible to vote in Maryland. An individual may forward mail to a new address for a variety of reasons aside from a change of permanent residence, and may still be entitled to vote lawfully in Maryland while receiving mail in another location. Thus, Plaintiff's analysis of the U.S. Post Office's National Change of Address registry does not show fraud or unlawful voting to the degree required to prove a likelihood of success on the merits.

The remaining example of voter fraud presented by Plaintiffs in Exhibit B is their allegation of four voters who voted in two states' 2022 primaries. ECF 37-1 at 3. Plaintiffs argue that these double votes demonstrate data inconsistencies overlooked or willfully ignored by the Maryland Board of Elections. ECF 37 at 4. Of note, however, there are data inconsistencies in Plaintiffs' own summary analysis. Plaintiffs identify two voters who allegedly voted in Maryland and then voted in the Texas 2022 primaries on September 1, 2022. ECF 37-1 at 3. However, Texas's primaries were held in March and May of this year, not September. This leaves only two voters

who Plaintiffs allege voted in two states' primaries. But even assuming these allegations are true, two instances of double voting falls far short to prove Plaintiffs' RICO claim because no evidence suggests these two voters were paid by county officials to double vote. In other words, the evidence of some small number of voters voting in more than one jurisdiction is entirely divorced from the RICO conspiracy alleged by Plaintiffs. There is no alleged connection to the CTCL grants, any action by the state of Maryland, or any of the county defendants.

Finally, Ms. Gibson's declaration is likewise unavailing. She reports seeing an individual place multiple ballots in a drop box during the 2020 election. Of note, this individual identified themselves as someone from the U.S. Post Office. Even absent that work-based justification, the mere act of dropping off multiple ballots does not invalidate those ballots or document unlawful activity. An individual can collect and drop off ballots for family or local community members without committing voter fraud. *See* Md. Code, Election Law § 9-307 (permitting a voter's agent to deliver an absentee ballot). This Court will not infer illegal activity from speculation. *Cf. King v. Whitmer*, 556 F. Supp. 3d 680, 718 (E.D. Mich. 2021) (refusing to infer "illegal double voting" from an individual's reported observation of people voting in person who had previously applied for an absentee ballot because a "resident can request an absentee ballot and thereafter decide to vote in person"). Moreover, this event occurred in 2020 and did not impact the 2022 midterm election, which this Motion seeks to invalidate.

In sum, Plaintiffs have failed to present evidence of intentional, organized voter fraud to support their RICO cause of action. Much of Plaintiffs' Motion is dedicated to describing what information *could* be obtained if permitted to depose and further analyze data acquired through discovery. ECF 37 at 10 – 14. However, "Plaintiffs are not entitled to rely on the discovery process to mine for evidence that never existed in the first instance." *King v. Whitmer*, 556 F. Supp. 3d

680, 720 (E.D. Mich. 2021). Based on the present record, Plaintiffs cannot show that they are likely to succeed on the merits of their claims.

### B. Irreparable Harm

Although their failure to show likelihood of success on the merits is dispositive of Plaintiffs' Motion, *see Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013) (requiring a movant to demonstrate all four factors), this Court will also weigh the remaining factors.

As with their previous injunctive efforts, Plaintiffs have not shown that they would be irreparably harmed absent a TRO or preliminary injunction. Plaintiffs seek to halt certification of the 2022 election results in Maryland. However, Plaintiffs have not explained how certification of those election results would harm them. None of the Plaintiffs claim to be candidates in the election or even assert that they voted in the 2022 election.

Many of the allegations made by Plaintiffs relate to the 2020 election, not the 2022 election. *See* ECF 41 at 7 ("the [Complaint] alleges voter fraud during the 2020 election"). Ms. Gibson's declaration reports an incident she witnessed in 2020. ECF 1-2. Reports of grants made by CTCL to Maryland counties occurred in 2020. ECF 1-1; ECF 1-4; ECF 1-5. And much of the analysis comparing voting records with change-of-address dates relates to the 2020 (or earlier) elections. Preventing certification of the 2022 election fails to remedy any of these allegations, even if the evidence had sufficed to suggest a meritorious claim.

Maryland law permits Ms. Gibson, or any registered voter, to file suit challenging the outcome of an election if an outcome-determinative violation of election law is uncovered before or after an election is run. *See* Md. Code, Election Law Article, § 12-202(a). Thus, adequate alternative remedies exist for election law violations. Plaintiffs argue that they "are affected by dilution of their votes, in this case by fraud which harmed them in both the 2020 and 2022

10

elections." ECF 41 at 7. But as explained above, Plaintiffs have failed to allege fraud that was outcome determinative on the election in any way. Thus, Plaintiffs have failed to allege irreparable harm.

### C. Balance of Equities and Public Interest

"The remaining factors – the balance of equities and the public interest – merge when the government is a party." *Bauer v. Elrich*, 463 F. Supp. 3d 606, 614 (D. Md. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The remedy that Plaintiffs seek—to "scrap" the election process and prevent any state agency from declaring a winner of any November 8th election—is grossly disproportionate from the allegations of harm in this case. Enjoining certification of the election results would likely leave vacant county-level positions across the State as early as next month. *See, e.g.*, Montgomery County Code, Part I, art. I, § 105 & art. II, § 202 (mandating the term of office for Members of the Montgomery County Council and County Executive begin at noon on the first Monday in December). Aside from two allegations of double voting in the Maryland 2022 Primary, Plaintiffs put forward only a handful of instances from past elections where individuals inferred, but did not actually witness, voter fraud. Their allegations require inferences and assumptions drawn from perfectly lawful activity. Plaintiffs have also put forward evidence of why the Maryland election was valid and secure, as demonstrated by the letter from the Maryland Board of Elections. On the whole, given the underwhelming evidence to suggest any irregularities, discarding or delaying the November 8th election results would contravene the public's interest.

### V. CONCLUSION

For the reasons stated above, Plaintiffs' motion for a TRO, preliminary injunction, and acceleration of the trial on the merits, ECF 37, is DENIED. A separate Order follows.

11

Dated: November 16, 2022

                                              /s/
                          Stephanie A. Gallagher
                          United States District Judge