IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| LOIS ANN GIBSON, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No.: SAG-22-1642 |
| FREDERICK COUNTY, MARYLAND, et al., | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiffs Lois Ann Gibson, Maryland 20-20 Watch, Charlton Scientific Educational and Engineering Foundation Inc., and others[1] (collectively "Plaintiffs") filed this lawsuit against a variety of defendants, primarily the Maryland Board of Elections, various Maryland counties (collectively, "Maryland Counties"), and the Center for Tech and Civic Life ("CTCL"), a Chicago-based non-partisan non-profit that provided grants to local governments in the 2020 election for the purpose of operationalizing safe and secure election administration. ECF 1 at 1–3; ECF 1-4 at 1. Plaintiffs principally allege that the Maryland Counties accepted the CTCL funding with the agreement that they would use the funding to pay individuals to fraudulently place ballots in ballot boxes for the purpose of influencing the 2020 general election in favor of Democratic candidates. ECF 9 at 5.

---

[1] Other plaintiffs include "A Committee of Injured Citizens/Voters for Themselves and All Others Similarly Situated," "Any, Presently Unknown State Agency which was Duped by the Multiple Frauds Alleged Herein," and "All Others Similarly Situated Injured Persons." ECF 1 at 1.

Multiple Defendants have moved to dismiss, *inter alia*, for failure to state a claim and lack of standing.[2] Plaintiffs have opposed the motions, *see* ECF 64, and seven Counties have replied.[3] Plaintiffs have also moved to have the U.S. Marshals serve two Defendants—Baltimore City and CTCL. ECF 65. For the reasons further explained below, Defendants' motions to dismiss will be granted and Plaintiffs' motion for service of process will be denied as moot.

## I. BACKGROUND

The following facts are derived from the Amended Complaint, ECF 9, and are taken as true for the purposes of evaluating Defendants' motions to dismiss.

Plaintiff Lois Ann Gibson volunteered to serve as an election judge in the 2020 General Election, however, she became ill and was unable to serve. ECF 9 at 4. On November 2, 2020, she witnessed an individual placing a "large number" of ballots into a ballot box. *Id.* Ms. Gibson approached the man and asked about his actions, and he responded that he was from the U.S. Post Office. *Id.* Ms. Gibson did not see an official uniform or vehicle. *Id.*

On November 3, 2020, a woman (name not disclosed) witnessed a man place a "stack" of ballots in the ballot box outside Thomas Johnson High School. ECF 1-2 at 3. This woman, her husband, and her daughter each received three mail-in ballots. *Id.*

---

[2] *See* ECF 14 (Maryland Board of Elections); ECF 18 (Calvert & Washington Counties); ECF 21 (Montgomery County); ECF 23 (Wicomico County); ECF 25 (Anne Arundel County); ECF 26 (Maryland State Prosecutor); ECF 29 (Harford County); ECF 31 (Garrett County); ECF 34 (Howard County); ECF 46 (Cecil County); ECF 48 (Talbot County); ECF 50 (Dorchester County); ECF 52 (Caroline County); ECF 55 (Baltimore County); ECF 57 (Allegany County); ECF 62 (Carroll County); ECF 63 (Kent County); ECF 68 (Queen Anne's County); ECF 71 (Prince George's County). Although Queen Anne's County and Prince George's County filed their motions to dismiss after Plaintiffs filed their Response, these motions merely incorporate the arguments made by other Defendants and thus no additional briefing is necessary.

[3] *See* ECF 66 (Calvert, Washington, Carroll, and Kent Counties); ECF 67 (Montgomery County); ECF 69 (Harford County); ECF 70 (Howard County).

On the same day, Ms. Jean-Elizabeth Jenkins-Ellis, a temporary employee with the Maryland Board of Elections who was hired to test voting machines, noticed one of the poll books started "acting up" with "an hourglass just spinning." ECF 1-2 at 5. Ms. Jenkins-Ellis restarted the poll book and reported the event to her supervisor. *Id.* Her supervisor noted that it was "not anything to worry about." *Id.*

Kurtis S. Kolb was a resident of Carroll County, Maryland. He applied for his Maryland Driver's License in December 2016. He subsequently moved to Clay County, Florida, where he registered to vote and registered for a Florida Driver's License. Clay County subsequently removed his Florida voter registration because he was registered to vote in Carroll County, Maryland, where he retains an active mailing address. Mr. Kolb states that he did not apply to vote in Carroll County. ECF 1-3; ECF 9 at 19 ¶ 34.

There were surveillance cameras at the eight ballot boxes in Frederick County for the 2020 election. ECF 9 at 5. At a public meeting, an employee of the Frederick County Board of Elections reported that these surveillance cameras were not actively monitored. *Id.* at 4–5, 17. Individuals have requested footage from Harford County's surveillance cameras; however, Harford County is unable to provide footage because the cameras were unable to retain footage. ECF 9 at 30 ¶ 76; ECF 9-11.

During the 2020 election, the non-profit CTCL awarded grants to local governments for "the public purpose of planning and operationalizing safe and secure election administration." ECF 9 at 12; ECF 1-4 at 1. CTCL awarded such grants to twenty-one counties in Maryland. *See* ECF 1-1. Somerset, St. Mary's, and Worcester Counties did not participate in the grant program. *Id.* at 2. Grantee Frederick County agreed to use the money for "Poll worker recruitment funds, hazard pay, and/or training expenses, Polling place rental and cleaning expenses for early voting

3

or Election Day, Vote-by-mail/Absentee voting equipment or supplies, and Election administration equipment." ECF 1-4 at 2. Grantee Carroll County agreed to use the money for "Ballot drop boxes, Personal protective equipment (PPE) for staff, poll workers, or voters, Poll worker recruitment funds, hazard pay, and/or training expenses, Temporary staffing, Vote-by-mail/Absentee voting equipment or supplies, and Election administration equipment." *Id.* at 5. The Counties could allocate the grant funds among those needs without notice to CTCL. *Id.* at 2, 5. There have been no reports that the grants were used for any other purposes. ECF 9 at 15 ¶ 16.

Howard County received a CTCL grant totaling $688,226.00 for administration of its 2020 elections. ECF 1-1 at 2. Howard County made payments to approximately 730 individuals between September through December 2020, which totaled $688,226.00. ECF 1-5. Most of these payments to individuals were in round-dollar amounts. ECF 9 at 20 ¶ 35. Howard County has not reported to Plaintiffs the purpose of the 730 payments. *Id.* at 19 ¶ 35.

Between December 2021 through February 2022, sixteen public citizens performed a canvas of the Harford County voter rolls and reported some voters had since moved or the addresses appeared abandoned. ECF 9 at 29 ¶ 73; ECF 9-10.

Citizens requested mail-in ballots in both the 2020 General Election, ECF 9-9, and the 2022 Gubernatorial Primary Election, ECF 9-8. ECF 9 at 28 ¶ 69. The Maryland Board of Elections sent 508,024 mail-in ballots to legitimate voters with the individual's name printed on each ballot for the 2022 Primary Election. ECF 9 at 28 ¶ 70; ECF 9-8. Approximately twelve percent of these requests were fulfilled through web delivery. ECF 9 at 29 ¶ 71; ECF 9-8.

To date, two Maryland Counties have not produced "all electronic images of voting and actual paper ballots and envelopes" in response to Plaintiffs' requests. ECF 9 at 20 ¶ 39. Harford County made available images of the ballots from the 2020 General Election. *See* ECF 9-11.[4]

On July 5, 2022, Plaintiffs filed a Complaint, ECF 1, and a Motion for Temporary Restraining Order, requesting that the Court enjoin Defendants from discarding any election materials from the 2020 election, ECF 2. This Court denied the motion, concluding that Plaintiffs failed to allege any imminent harm. ECF 4. Plaintiffs filed a motion to reconsider, ECF 6, which this Court again denied, ECF 7. Plaintiffs then filed their Amended Complaint. ECF 9. Based on the allegations described above, the Amended Complaint asserts various claims of voter fraud, tax fraud, common law fraud, constitutional violations, and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act in Maryland and other states across the nation. ECF 9 at 9. Plaintiffs seek declaratory judgment, criminal and civil penalties, along with injunctive relief, *i.e.*, a "scrapp[ing]" of the Maryland election system. ECF 9 at 38–39.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

When a Rule 12(b)(1) motion contests the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction rests with the plaintiff. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A challenge to

---

[4] The Amended Complaint further alleges that Dr. Douglas Frank made a presentation at the Baltimore County Republican women's club in which he discussed voter fraud. The fact that he made a presentation does not bolster Plaintiffs' claims, and the contents of the presentation are not included in the Amended Complaint. Similarly, Plaintiffs' response to the motions to dismiss attaches several exhibits that are not discussed here because they are not attached to the Amended Complaint. *See* ECF 64-3, 64-4. Even had those exhibits been included, however, this Court's standing analysis would remain the same, because the exhibits do not add any concrete factual allegations of particularized harm to Plaintiffs.

jurisdiction may be either facial, *i.e.*, the complaint fails to allege facts upon which subject matter jurisdiction can be based, or factual, *i.e.*, jurisdictional allegations of the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). *See also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (same); *Richmond, Fredericksburg & Potomac R.R. Co.,* 945 F.2d at 768 (same). In determining whether jurisdiction exists, the district court regards the pleadings' allegations as mere evidence and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Richmond, Fredericksburg & Potomac R.R. Co.,* 945 F.2d at 768.

Where a plaintiff lacks standing to pursue a claim, the court lacks subject matter jurisdiction. *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 786 (4th Cir. 2019) ("If a party does not have standing, then there is no federal jurisdiction, and 'the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868))). Standing requires a plaintiff to possess "a legally cognizable interest, or 'personal stake' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene,* 563 U.S. 692, 701 (2011)).

## III. DISCUSSION

Preliminarily, this Court must ascertain Plaintiffs' specific claims. In their Amended Complaint, Plaintiffs do not enumerate counts or identify specific violations of any statutory or regulatory provisions. Instead, Plaintiffs allude to various generic "violations" in their jurisdictional statement and throughout their Amended Complaint. *See, e.g.*, ECF 9 at 9 ("A conspiracy under the RICO statute and other constitutional violations, including the equal protection of the laws, falsification of State and Federal Voting records and the magnitude of the claims and due process violations patent in the facts firmly establish Federal Jurisdiction.").

Plaintiffs also mention "common law fraud," ECF 9 at 38; ECF 64 at 4, which is a claim under Maryland common law. *See Van Buren v. Walmart, Inc.*, No. 19-CV-0911, 2020 WL 1064823, at *7 (D. Md. Mar. 5, 2020), aff'd, 855 F. App'x 156 (4th Cir. 2021) (listing elements of a Maryland common law fraud claim). The Amended Complaint's presentation violates Fed. R. Civ. P. 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Generally, however, Plaintiffs appear to assert violations of the Equal Protection and Due Process Clause of the U.S. Constitution, the RICO Act, state common law fraud, and unspecified state constitutional provisions.

Defendants raise numerous substantive and procedural defects in Plaintiffs' Amended Complaint. Defendants argue that Plaintiffs fail to allege facts sufficient to make out the requisite elements of any of their claims. Defendants note that injunctive relief, as requested by Defendants, is not available under RICO. *See Hengle v. Treppa*, 19 F.4th 324, 356 (4th Cir. 2021), *cert. dismissed sub nom. Asner v. Hengle*, 142 S. Ct. 2093 (2022), and *cert. dismissed*, 142 S. Ct. 2093 (2022) ("Section 1964 does not authorize private RICO plaintiffs to sue for prospective injunctive relief."). Defendants highlight that courts have refused to consider governmental liability under the RICO statute. *See Gutierrez v. E. Beach Bay-Marine Marina, Inc.*, No. 2:14CV476, 2015 WL 13064927, at *6 (E.D. Va. Sept. 23, 2015), aff'd, 639 F. App'x 179 (4th Cir. 2016) ("[A] municipality . . . cannot be civilly liable under RICO because it is 'incapable of having the criminal intent necessary.'" (quoting *Levy v. City of New Carrollton*, No. 2006–2598, 2009 U.S. Dist. LEXIS 127062, *46 (D. Md. Mar. 17, 2009))). Many County Defendants note that Plaintiffs do not allege any specific actions by a majority of the counties, aside from lawfully accepting a CTCL grant. *See, e.g.*, ECF 21-1 at 1 ("[T]he First Am. Compl. fails to set forth any factual allegations involving actions by Montgomery County.") Other Counties note that they have no oversight of

7

their own elections because the decision-making power rests with the Maryland Board of Elections. *See, e.g.*, ECF 18-1 at 11. Finally, multiple Counties note that they were not properly served. *See, e.g.*, ECF 29 at 4 ("Plaintiffs have never served a Summons or Complaint upon Harford County.").

Despite these multiple procedural and substantive challenges, this Court can begin and end its analysis with Plaintiffs' standing. "To ensure that the Federal Judiciary respects 'the proper—and properly limited—role of the courts in a democratic society,' a plaintiff may not invoke federal-court jurisdiction unless he can show 'a personal stake in the outcome of the controversy.'" *Gill v. Whitford*, __ U.S. __, 138 S. Ct. 1916, 1929 (2018) (internal citations omitted). "A federal court is not 'a forum for generalized grievances,' and the requirement of such a personal stake 'ensures that courts exercise power that is judicial in nature.'" *Id.*

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must establish the three "irreducible" minimum requirements of Article III standing: (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

For election law cases, the Supreme Court has "long recognized that a person's right to vote is 'individual and personal in nature.' Thus, 'voters who allege facts showing disadvantage

to themselves as individuals have standing to sue' to remedy that disadvantage." *Gill*, 138 S. Ct. at 1929 (internal citations omitted). Here, though, Plaintiffs have not alleged that their ability to cast a vote in any election was burdened, or that their votes went uncounted or were afforded less weight.

To the extent that they are alleging that governmental entities did not act in accordance with the law in administering the elections, any injury from those actions would accrue to every citizen and would not be particularized to Plaintiffs. "[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)); *see also United States v. Hays,* 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power."). In short, Plaintiffs allege no concrete or particularized injury to them but simply generalized grievances applicable to the community as a whole. Courts routinely find such grievances insufficient to demonstrate standing to sue. *See Iowa Voter All. v. Black Hawk Cnty.*, 515 F. Supp. 3d 980, 991 (N.D. Iowa 2021) ("Because plaintiffs cannot show how the counties' alleged violations compromised the integrity of the election such that they were injured in a personal and individual way, their injury is undifferentiated from the injury to any other citizen."); *see also O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747-NRN, 2021 WL 1662742, at *6–8 (D. Colo. Apr. 28, 2021), aff'd, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022), *cert. denied sub nom. O'Rourke v. Dominion Voting Sys.*, No. 22-305, 2022 WL 17408191 (U.S. Dec. 5, 2022) (collecting cases dismissing allegations of election fraud for failure to show standing).

Plaintiffs appear to assert that they were particularly harmed because the CTCL grants were used to support candidates in the political party they oppose. This Court notes, however, that Plaintiffs do not allege that they supported any particular candidate, or even that they voted in the 2020 or 2022 elections. Moreover, "[m]erely alleging that the grants may influence the election result and lead to possible disenfranchisement is not an injury-in-fact." *Texas Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441, 452 (E.D. Tex. 2020); *see also Minnesota Voters All. v. City of Minneapolis*, No. CV 20-2049, 2020 WL 6119937, at *7 (D. Minn. Oct. 16, 2020) (finding a lack of standing for plaintiffs asserting that the urban-biased distribution of the CTCL grants favored a particular demographic group); *Pennsylvania Voters All. v. Ctr. Cnty.*, 496 F. Supp. 3d 861, 869 (M.D. Pa. 2020), appeal dismissed *sub nom. Pennsylvania Voters All. v. Cnty. of Ctr.*, No. CV 20-3175, 2020 WL 9260183 (3d Cir. Nov. 23, 2020), and cert. denied *sub nom. Pennsylvania Voters All. v. Ctr. Cnty., Pennsylvania*, 141 S. Ct. 1126 (2021) (same); *Election Integrity Fund v. City of Lansing*, No. 1:20-CV-950, 2020 WL 6605987, at *2 (W.D. Mich. Oct. 19, 2020) (same). Plaintiffs' remedy for that type of grievance lies in the political process, not in the federal courts.[5] *See Richardson*, 418 U.S. at 179 ("It can be argued that if respondent is not permitted to litigate this issue [for lack of standing], no one can do so. In a very real sense, the absence of any particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process.").

---

[5] Maryland law permits any registered voter to file suit in state court challenging the outcome of an election if an outcome determinative violation of election law is uncovered before or after an election is run. *See* Md. Code, Election Law Art., § 12-202(a). But even if such action could be brought in federal court, Plaintiffs' allegations do not suggest any outcome determinative violations in either the 2020 or 2022 Maryland elections.

In sum, Plaintiffs lack standing to bring their claims and this Court therefore lacks subject matter jurisdiction.   Plaintiffs' motion to serve process on the two remaining Defendants is moot.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss—ECF 14 (Maryland Board of Elections); ECF 18 (Calvert & Washington Counties); ECF 21 (Montgomery County); ECF 23 (Wicomico County); ECF 25 (Anne Arundel County); ECF 26 (Maryland State Prosecutor); ECF 29 (Harford County); ECF 31 (Garrett County); ECF 34 (Howard County); ECF 46 (Cecil County); ECF 48 (Talbot County); ECF 50 (Dorchester County); ECF 52 (Caroline County); ECF 55 (Baltimore County); ECF 57 (Allegany County); ECF 62 (Carroll County); ECF 63 (Kent County); ECF 68 (Queen Anne's County); ECF 71 (Prince George's County)—will be granted. Because this court lacks subject matter jurisdiction over Plaintiffs' claims, it dismisses the case *sua sponte* as to remaining Defendants.   F.R.C.P. 12(h)(3).   Plaintiffs' Motion for Service, ECF 65, is denied as moot.   A separate Order follows.

Dated: December 16, 2022                                        /s/
                                                                Stephanie A. Gallagher
                                                                United States District Judge